Bigelow et al. *v.* Andress et al.

"lawfully," they seldom avail in pleading. 1 Chitty's Pl. 235. There should be a clear and distinct charge that the act was done maliciously and willfully. *Saxon* v. *Castles*, 8 Ad. & E. 652; *Drewe* v. *Coulton*, 1 East, 563, note *b*; *Harman* v. *Tappenden et al.*, 1 East, 555; 11 Johns. 114; 8 Cowen, 185; *Tompkins* v. *Sands*, 8 Wend. 468.

---

John R. Bigelow *et al.*

*v.*

Henry W. Andress *et al.*

1. Lien—*garnishment.* The service of a garnishee process in a proceeding commenced by attachment, does not create a lien in favor of the creditor, upon the property or effects of the debtor in the hands of the garnishee.

2. Chancery—*jurisdiction—creditors' bills.* A court of equity will not intervene by way of injunction, or otherwise, in behalf of a simple contract creditor, upon the ground that his debtor has made a fraudulent transfer of his property. An equitable attachment is not known to our law.

3. A party who has simply commenced his suit at law by suing out an attachment, and procured a service of garnishee process upon the fraudulent grantee of the debtor, stands in no better position to invoke the aid of a court of chancery to preserve the property in the hands of the garnishee, than he would if he had not sued out his attachment; he is still a mere simple contract creditor.

4. As a general rule, a creditor must first reduce his debt to a judgment before he can resort to a court of equity for aid in its collection.

If he desires a fraudulent obstruction removed, or to subject an equitable estate, not liable to sale on execution, he must first exhaust his legal remedies, by obtaining a judgment, and a return of *nulla bona*, before a court of equity will afford such relief.

5. INJUNCTION — *garnishee*. A court of chancery will not interpose by injunction to restrain a garnishee from selling or disposing of property of the debtor in his hands, when the bill contains no allegation that there is any danger of loss by reason of the insolvency of the garnishee, before a trial could be had in the suit at law.

WRIT OF ERROR to the Circuit Court of Cook county; the Hon. GEORGE MANIERRE, Judge, presiding.

John R. Bigelow, Charles H. Hayden and Henry W. Bigelow, the plaintiffs in error, exhibited their bill in chancery in the court below, against Henry W. Andress, Charles Andress and Charles W. Earl, in which it was set forth that previously thereto, to wit, on the 5th day of December, 1861, the complainants had caused a writ of attachment to issue out of the said Circuit Court, against the goods and chattels, lands and tenements of the said defendant, Henry W. Andress, which said writ had been served by summoning Charles W. Earl as garnishee of said Henry W. Andress.

That the defendant, Henry W. Andress, was formerly engaged in the paper-hanging business, in the city of Chicago, in this State, and between the 8th day of September, 1859, and the 1st day of May, 1860, purchased goods of the complainants on a credit, and that for such goods so purchased of the complainants, the said Henry W. Andress was, on the first day of December, 1861, indebted to them in about the sum of eight hundred and forty dollars, which sum was due and remained wholly unpaid.

That recently, the said Henry W. Andress made a pretended sale or transfer of his stock of goods to his co-defendant and father, who resides in the city of Cincinnati, in the State of Ohio, and that said Charles Andress claimed and pretended to own said stock of goods, and was, by his pretended agent, Charles W. Earl, selling and disposing of them in said city of Chicago, where the goods still remained, the said Henry W. Andress having left Chicago for parts unknown to the complainants.

That the said Charles W. Earl was then in possession of said stock of goods, and engaged in selling and disposing of them, as the agent or clerk of said Charles Andress.

That the defendants, Henry W. Andress and Charles Andress, were, some two years, and a half previously, co-partners in said business, in the city of Chicago; that while so engaged in business, they contracted debts, some of which the said Charles Andress claims to have paid, and he pretended that the said stock of goods was transferred to him by his said son, Henry W. Andress, in payment of the amount which he, the said Charles Andress, had, or claimed to have, paid on the said co-partnership indebtedness.

The bill further set forth, that the complainants were remediless in the premises, at and by the direct and strict rules of the common law, and could not have adequate relief, except in a court of equity, and that they could not safely proceed to attach and sell the said goods of said Henry W. Andress, by reason of said pretended transfer, and of the claim of said Charles Andress in and to said goods.

The bill charged, that the pretended sale or transfer of said stock of goods from said Henry W. Andress to Charles Andress, was fraudulent and void as to the complainants and other creditors of said Henry W. Andress, and that it was made for the purpose of hindering and delaying the creditors of said Henry W. Andress in the collection of their debts against him, and of placing said stock of goods beyond the reach of the creditors of said Henry W. Andress, and that a full and adequate consideration was not paid by said Charles Andress to said Henry W. Andress for said stock of goods.

It was stated in the bill, that Henry W. Andress then had no property within the State of Illinois, other than the said stock of goods, out of which the complainants could make any portion of their said debt against him.

The prayer of the bill was, that the said pretended sale or transfer of said goods from Henry W. Andress to Charles Andress might be adjudged and decreed to be fraudulent and void, and that the same might be ordered to be sold to satisfy the amount which should be found to be due and owing to the complainants from said Henry W. Andress, and that the defendants, Henry W. Andress, Charles Andress and Charles W. Earl, might be enjoined and restrained from selling, assigning, transferring, delivering, or in any manner incumbering or disposing of, any of the said goods, so transferred by Henry W. Andress to Charles Andress, or from paying over, or in any manner disposing of, any money, the avails of sales of said goods, until the further order of the court.

And to the end that the defendants might, if they could, show why the complainants should not have the relief sought, certain interrogatories were propounded to the defendants, touching the object of the transfer of the goods from Henry W. Andress to Charles Andress, and in relation to the other facts alleged in the bill.

And finally, the complainants prayed that Henry W. Andress might be, in like manner, prohibited from making any assignment of his property, and from confessing any judgment, for the purpose of giving preference to any other creditor over them, and from doing any other act to enable other creditors to obtain his property; and that a receiver might be appointed, according to the course of practice in the court of chancery, and with the usual powers of receivers in like cases, of all the property, equitable interests, things in action, and effects, of the said Henry W. Andress—and prayed for general relief, and for an injunction.

To this bill the following demurrer was interposed:

And the said Charles Andress and Charles W. Earl, by Scates, McAllister & Jewett, their solicitors, by protestation, not confessing or acknowledging all or any of the matters and

things in the said complainants' bill to be true in such manner and form as the same are therein set forth and alleged, do demur thereto, and for cause of demurrer show that the complainants have not, by their said bill, shown such a case as entitles them to any such relief as is thereby prayed, inasmuch as it does not appear thereby that they have ever obtained any judgment at law against the said Henry W. Andress upon the said supposed indebtedness, or that there has ever been any lien obtained or acquired by the issuing of any execution against the said Henry W. Andress; and inasmuch as it also appears thereby, that at the time of filing their said bill of complaint, the said complainants had only sued out an attachment against the estate of said Henry W. Andress, and it does not in any manner appear in and by the said bill of complaint that the complainants have recovered any judgment whatever in the said attachment suit in said bill mentioned.

Wherefore these defendants demand the judgment of this honorable court, whether they shall be compelled to make any further answer to the said bill, or any of the matters or things therein contained, and pray to be hence dismissed, etc.

The demurrer was sustained by the Circuit Court, and the complainants electing to stand by their bill of complaint, the same was dismissed. Thereupon the complainants sued out this writ of error.

Under the assignment of errors, two questions are presented:

*First.* Whether by commencing a suit by attachment, and the service of garnishee process, the attaching creditor acquires such a lien upon property in the hands of the garnishee, as will authorize a court of equity to interpose by injunction to prevent him from disposing of it, before a judgment and execution are had in the proceeding at law.

*Second.* Whether, independent of a lien, the court will entertain a bill to preserve the property, until it can be subjected to a sale on legal process, on the ground that the garnishee has acquired all his rights to the property in fraud of the creditors of the defendant in attachment.

Messrs. E. S. SMITH, and E. A. STORRS, for the plaintiffs in error.

Upon the first proposition it is contended that from the time of garnishment the effects in the hands of the garnishee are *in custodia legis.* *Brashear* v. *West*, 7 Peters' R. 608; *Biggs* v. *Kouns*, 7 Dana, 405. And under the statute, all goods and effects of the debtor in the hands of the garnishee are liable to satisfy the judgment. Rev. Stat. 1845, p. 67, sec. 15.

Then as between the attaching creditor and the garnishee, the former has a *lien* upon the property of the debtor in the hands of the latter for the satisfaction of his debt. *Tappan* v. *Evans*, 11 N. Hamp. R. 311; *Kittredge* v. *Warren*, 14 ib. 509; *Stone* v. *Anderson*, 6 Foster, 506; *Camp* v. *Bates*, 11 Conn. 53; *Hunt* v. *Field*, 1 Stockton (N. J.) 36; *Falconer* v. *Freeman*, 4 Sand. Ch. 565.

The question was then presented, whether a court of equity would interpose its restraining power to prevent the disposition or transfer of property fraudulently conveyed, and in the hands of a fraudulent vendee, before judgment at law. The case of *Wiggins* v. *Armstrong*, 2 Johns. Ch. R. 144, was cited as having been considered opposed to such interference by a court of equity, until a judgment at law had been obtained, and in that case Chancellor KENT cited the cases of *Angell* v. *Draper*, 1 Vern. 329; *Shirley* v. *Watts*, 3 Atk. 200; *Bennett* v. *Musgrove*, 2 Ves. 51; and a case before Lord NOTTINGHAM, cited in *Balch* v. *Wastall*, 1 P. Wms. 445, as sustaining his decision.

But there is a distinction between the case of *Wiggins* v. *Armstrong*, and the one at bar. That was put upon the ground that the party seeking relief had no *lien* upon the property; here, the attaching creditor having a lien on the effects in the hands of the garnishee, a court of equity will preserve the property until judgment is obtained. *Beck* v. *Burdett*, 1 Paige, 305; *Andrews* v. *Durant*, 18 New York, 500; *Tappan* v. *Evans*, 11 N. Hamp. 311; *Kittredge* v. *Warren*, 14 N. Hamp. 509; *Stone* v. *Anderson*, 6 Foster,

506; *Dodge* v. *Griswold*, 8 N. Hamp. 425; *Camp* v. *Bates*, 11 Conn. 53; *Hunt* v. *Field*, 1 Stockton (N. J.) 36; *Falconer* v. *Freeman*, 4 Sand. Ch. 565; *Lewis* v *Dodge*, 17 How. P. Rep. 229; *Heyneman* v. *Dannenberg*, 6 Cal 276; *Holt* v. *Bancroft*, 30 Ala. 205; *Smith* v. *Gettinger*, 3 Kelly (Geo.) 140.

Upon the second question :

It is enough that the complainants have an *apparent* right, though not yet established at law, which would be irreparably injured, unless the court restrain the commission of the act threatened, and preserve the property, pending the action in which that right is to be determined. *Great Western Railway Co.* v. *Birmingham and Oxford Junction Railway Co.*, 2 Phillips, 601; *The Shrewsbury and Chester Railway Co.* v. *The Shrewsbury and Birmingham Railway Co.*, 4 Eng. Law & Eq. 176; *Curtis* v. *Marquis of Buckingham*, 3 Vesey & Beames, 168; *Echliff* v. *Baldwin*, 16 Ves. 267; *Quackenbush* v. *Van Riper*, 2 Green Ch. 356; *Huntington* v. *Bell*, 2 Porter, 51; *Miller* v. *Washburn*, 3 Ired. Ch. 161; *Smith* v. *Koontz*, 4 Hay. 189; *Rutherford* v. *Metcalf*, 5 Hay. 58; *Seneca Woolen Mills* v. *Tillman*, 2 Barb. Ch.; *Smith* v. *Carll*, 5 Johns. Ch. 120; *Hampson* v. *Hampson*, 3 Vesey & Beames, 42; *Clark* v. *Clark*, 2 Vern. 413; *Addison* v. *Dawson*, 2 Vern. 678; *Clark* v. *Hanaway*, 2 P. Wms. 203; *Bennett* v. *Wade*, 2 Atk. 324; *Wright* v. *Proud*, 13 Ves. 136; *Hale* v. *Warner*, 9 Ves. 605; *King* v. *King*, 7 Ves. 172; *The Universities of Oxford and Cambridge* v. *Richardson*, 6 Ves. 706; *Crockford* v. *Alexander*, 15 Ves. 138; *Twort* v. *Twort*, 16 Ves. 128; *Kender* v. *Jones*, 17 Ves. 110; *Cullcowper* v. *Baker*, 17 Ves. 128; *Prince Albert* v. *Strange et al.*, 1 McNaughten & Gordon, 46.

So where a debtor who has made a fraudulent sale of his property, dies before the creditor's rights are ascertained at law, equity will interpose. *Martin* v. *Densford*, 3 Blackf. 295; *The Unknown Heirs of Whitney* v. *Kimball*, 4 Ind. 548; *O'Brien* v. *Coneter*, 2 Blackf. 421; *Sweney* v. *Ferguson*, ib. 129.

And where the debtor is a non-resident. *Cockrell* v. *War-*

*ner*, 14 Atk. 345 ; *Green* v. *Campbell*, 2 Jones' Eq. 448 ; *Golden* v. *Maupin*, 2 J. J. Marsh. 233 ; *Hieronymous* v. *Hicks*, 3 ib. 701 ; *Moore* v. *Simpson*, 5 Litt. 49 ; *Hunt* v. *Clay*, Litt. Sel. Cas. 26.

Also, where legal remedies are incomplete. *Gascoyne* v. *Lamb*, 11 Jur. 902 ; *Burdett* v. *Booth*, 10 L. J. (n. s.) 356 ; *Whitmore* v. *Oxborrow*, 2 Young & Col. ; *Larkins* v. *Paxton*, 2 Beavan, 319 ; *Jendewine* v. *Agate*, 5 Bress. 283 ; *Hilton* v. *Lord Granville*, 4 Beavan, 137 ; *Grayson v. Booth*, 5 Hare ; *Hayward* v. *Dimsdale*, 17 Ves. 110 ; *Gilbert* v. *Hales*, 8 Beav. 236 ; *Lister* v. *Turner*, 5 Hare, 290 ; *Elsey* v. *Luytens*, 8 Hare, 159.

Messrs. McALLISTER, JEWETT & JACKSON, for the defendants in error.

The single question in the case is, not whether fraud is a ground of equity jurisdiction, as a general proposition ; but whether the bill, upon its face, shows that the complainants are in a position to ask the interference of a court of equity in their behalf. The effects of the debtor in the hands of the garnishee, were not *in custodia legis*. · The cases in 7 Peters, 608, and 7 Dana, 405, do not establish the proposition of counsel in that regard. · The former decision rests solely upon a statute of Pennsylvania, which is different from ours ; and the case in 7 Dana contains no allusion to the subject.

The mere issuing of the writ of attachment creates no lien upon property of the debtor, nor does the service upon the garnishee create a lien upon effects in his hands.

The complainants are simple contract creditors, and equity will not interpose in their behalf to prevent the garnishee disposing of the debtor's effects in his hands. *Angell* v. *Draper*, 1 Vern. 399 ; *Bennett* v. *Musgrove*, 2 Ves. Sen. 51 ; *Wiggins* v. *Armstrong*, 2 Johns. Ch. R. 144 ; *Brinkerhoff* v. *Brown*, 4 Johns. Ch. R. 671 ; *Beck* v. *Burdett*, 1 Paige, 305.

Our statute furnishes a most apt and pertinent authority on

21

this point. Section 26, chapter 21, Rev. Stat. 1845, entitled " Chancery," provides that —

" Whenever an execution shall have been issued against the property of a defendant, on a judgment, at law or in equity, and shall have been returned unsatisfied, in whole or in part, the party suing out such execution may file a bill in chancery," etc.

We do not claim that the court of chancery gets its jurisdiction in cases of creditors' bills, by virtue of this statute; but we do claim that it is at least, declaratory of the law, and the practice of courts of chancery upon this subject; and, as such, is binding upon the courts of this State, and so it has been regarded. *Ballentine et al.* v. *Beall*, 3 Scam. 203; *Miller et al.* v. *Davidson*, 3 Gilm. 523; *Manchester et al.* v. *McKee's Ex'rs*, 4 Gilm. 515; *Farnsworth* v. *Strasler*, 12 Ill. 485; *Ishmael* v. *Parker*, 13 Ill. 328; *Hitt et al.* v. *Ormsbee*, 14 Ill. 233; *Greenway et al.*, v. *Thomas et al.*, 14 Ill. 271.

Mr. Justice WALKER delivered the opinion of the Court.

This record presents two questions for determination. First, whether by commencing an attachment suit, and the service of garnishee process, the attaching creditor acquires such a lien upon property in the hands of the garnishee, as will authorize a court of equity to interpose its restraining power, to prevent him from disposing of it before a judgment and execution are had in the proceeding at law. The second is, whether, independent of a lien, the court will entertain a bill to preserve the property, until it can be subjected to a sale on legal process, on the ground, that the garnishee has acquired all of his rights to the property, in fraud of the creditors of his vendor.

In reference to the first proposition, it may be said, that the plaintiff in attachment acquires all of his rights in that proceeding, from the statute. If a lien exists by virtue of the service of garnishee process, it is by virtue of the statute, as this proceeding is unknown to the common law. And the

statute has not, in terms, made such service a lien upon the effects of the debtor, in the hands of the garnishee. Under the act regulating attachments, it seems to be the levy alone which creates a lien on property. The delivery of the writ to the officer does not, as with an execution on a judgment, create a lien. *Pierson* v. *Robb*, 3 Scam. 139. It is true, the act does not give any priority of lien to the first levy, but requires a *pro rata* disposition of the proceeds of the sale of the property attached, on all the judgments against the defendant, rendered at the same term, on writs issued to that term.

It has been held, that such a levy is a qualified lien on the estate attached for the satisfaction of the debt, which becomes merged in the judgment. *The People* v. *Cameron*, 2 Gilm. 471. It was again held, that a levy on real estate, under a writ of attachment, pursued to judgment, execution and sale made under it, operates as a lien on the land, from the date of the levy. *Martin* v. *Dryden*, 1 Gilm. 213. Again, the court, in the case of *Burnell* v. *Robertson*, 5 Gilm. 282, held, that where personal property was sold at private sale, by the defendant in attachment, and the purchaser had not reduced it to possession before the writ was levied, it was subject to the attachment. These cases establish the fact that a lien is created by the levy of the writ upon the property.

But this question of whether the service of the garnishee summons creates an actual or a qualified lien upon the effects in the hands of the garnishee, has not been determined, in terms, by this court. If, as we have seen, it is the levy upon the defendant's property which, alone, creates the lien, we are at a loss to perceive how the mere service of a summons on a third person to appear and answer whether he is indebted to, or has effects of the defendant in his possession, can create a lien of any character. It is the seizure of the property under the writ, and not its delivery to the officer, that constitutes the lien. It is not notice, actual or constructive, as in case of a *fi. fa.*, that produces that effect. The property is only in the custody of the law, when it is reduced to the possession of the officer.

By the service of the garnishee process, there can be no pretense that the property is, in any sense, transferred to the officer, or that he thereby acquires any right to control it. The garnishee still has the right to retain it, and by the service, only becomes liable to account for it or its proceeds, if judgment shall be rendered against him on the trial. The statute does not prohibit him from disposing of it, but only renders him liable on failing to produce it, to satisfy the judgment.

The fifteenth section,. it is urged, renders the property in the hands of the garnishee liable to satisfy the judgment against the debtor in attachment. The judgment there referred to is, obviously, the one that may be recovered against the garnishee. The latter clause of this section only has reference to the judgment that may be recovered against the garnishee. By this provision, not only his, but the debtor's property in his hands, are made liable to satisfy the judgment against the garnishee.

The statute has nowhere provided for the sale of property, in the hands of the garnishee, to satisfy the judgment against the debtor. This would seem to place it beyond doubt, that it was not the design of the legislature to create any lien on such property. It was, however, regarded as eminently just, that the garnishee might surrender the debtor's property in his hands, to satisfy the judgment recovered against him, not because he was a debtor, but a mere bailee, and in no default to any person.

It is insisted, that the construction contended for was given to a similar statute in Pennsylvania. *Brashear* v. *West*, 7 Pet. 608. But the provisions of that act are materially different from ours. It provides, that the officer executing the attachment, " shall go to the house, or to the person in whose hands or possession the defendant's goods or effects are supposed to be, and then and there declare, in the presence of one or more credible persons of the neighborhood, that he attached the same goods or effects. From and after which declaration, the goods, money or effects so attached, shall remain in the officer's power, and be by him secured, in order to answer and abide the judgment of the court in that case,

unless the garnishee will give security therefor." It will be observed, that this statute, unlike ours, expressly declares that the property shall remain in the power of the officer, and be secured by him, to abide the judgment of the court. Our statute does not require the officer to secure the property, nor does it require the garnishee to enter into bond before he can be permitted to retain it in his custody.

If the garnishee desires to free himself of all liability, he may surrender the property to the officer, and terminate the responsibility of its custody. Or, he may turn it out to be sold on execution to satisfy the judgment against himself. This is provided for by the statute. These provisions all repel the presumption that the legislature designed to create any lien upon, or place the property in the hands of the garnishee, in the custody of the law.

Then will a court of equity, independent of any lien acquired by the garnishment, entertain the bill, on the ground of alleged fraud upon the creditors of the defendant in attachment, by the sale of his property to the garnishee? If so, it can only be, for the reason, that complainant does not have a perfect, adequate and complete remedy at law. He has resorted to his action at law, and by that proceeding has acquired no other or different right to, or interest in, the property than he had before the proceeding was instituted. He may have acquired rights against the garnishee, but not against the property of the defendant in his hands. Nor can we perceive that his footing in a court of equity, is any better or different than if the attachment had not been sued out. And we are not aware that it has ever been seriously contended that an equitable attachment could be sustained. It was, no doubt, because no such remedy existed, that the legislature provided the means of reaching the property by garnishee process.

We are unable to perceive anything to prevent the suit at law from progressing to its final termination, precisely as attachment suits always do. If discovery is desired, it can be as effectually had by the answer of the garnishee as by his answer to a bill. The interrogatories propounded to him may be made as searching and efficacious, as if they were contained

in a bill. If the answer of the garnishee is untrue, it may be contradicted as well as an answer to a bill. Nor do we see that any grounds are shown for an injunction, to restrain the garnishee from disposing of the property. The bill contains no allegation that there is any danger of loss before a trial can be had at law.

Complainants having no judgment, execution, or even a lien on the property, they occupy the same situation as any other simple creditor, and an allegation of danger of loss would not give jurisdiction, in such a case. The current as well as the weight of authority, both in Great Britain and this country, seems to be, that a court of equity will not interfere, until the plaintiff has obtained his judgment; if he desires to have a fraudulent obstruction removed, or if it is to subject an equitable estate, not liable to sale on execution, he must exhaust his legal remedies, by obtaining a judgment and a return of *nulla bona*, before a court of equity will afford such relief.

This question is not one of first impression in this court, but has been repeatedly before it for adjudication. In the case of *Ballentine* v. *Beall*, 3 Scam. 203, it was held, that when a creditor has obtained a judgment and has his execution returned no property found, he may file his bill, to subject property to the payment of his debt, not liable to sale on execution. In the case of *Miller* v. *Davidson*, 3 Gilm. 518, it was held, that where a party desires to remove a fraudulent incumbrance out of the way of an execution, he may file his bill as soon as he obtains his judgment. But if he seek to satisfy his debt out of an equitable estate, not liable to sale on execution at law, then he must exhaust his legal remedy, by getting judgment, and an execution returned no property found, before he can resort to equity.

In the case of *Manchester* v. *McKee's Ex'rs*, 4 Gilm. 511, the same rule is announced, as in *Ballentine* v. *Beall*. And in the case of *Farnsworth* v. *Strasler*, 12 Ill. 482, it was held, that the court of equity would entertain a bill to remove a fraudulent conveyance, to obtain satisfaction of a money decree, where an execution had already been levied upon the

property. And in the case of *Ishmael* v. *Parker*, 13 Ill. 324, the same rule was adopted, as in *Miller* v. *Davidson.*

Subsequently, in the case of *Greenway* v. *Thomas*, 14 Ill. 271, all of the questions involved in the case at bar were before the court, when it was held that a creditor, as a general rule, must first reduce his debt to a judgment before he can resort to a court of equity for aid in its collection. It was likewise held, that the rule would not be relaxed, if it was in his power to comply with this requirement. In that case, the bill alleged that the debtor had left the State, after having made a fraudulent assignment for the benefit of his creditors, and put his assignees in possession of his property. It was also alleged, that process could not be served upon him, as an excuse for not first having obtained a judgment at law. It was there said, " that under these circumstances, there would have been no trouble in prosecuting an action at law, by attachment, under our statute, in which he could have reduced his demand to a judgment. The assignment being fraudulent and void as to creditors, the attachment might have been levied directly upon the assigned property, and taken from the possession of the assignees ; or, if complainant did not choose to assume the responsibility of such a course, in anticipation of a decision upon the validity of the assignment, he might at least have garnisheed the debtors of the assignors. It is true, he would not have obtained a personal judgment, but he would still have established his claim in a court of law, which would, at least as to the property and credits attached, have authorized him to have called upon the aid of a court of chancery to remove the embarrassments which the fraudulent assignment presented to the collection of his debt."

These cases settle the doctrine, that the complainant must first establish his claim at law, before a court of equity will lend its aid. And it is for the reason that a court of chancery does not assume jurisdiction, to settle and establish purely legal rights. If jurisdiction were entertained in this case to ascertain the legal validity of complainant's demand, it being wholly of a legal character, so as to afford relief against obstructions that would afterwards present themselves to an

execution, no reason is perceived why such jurisdiction might not be assumed in all cases, where legal demands might be so obstructed. This would be an innovation on the settled practice of this court, as well as the chancery practice generally. Whatever may have been held in other courts, we regard this as the practice of this court, too long and too firmly settled to be departed from, simply because it may have been differently held in some other tribunals. If the authorities were uniform against it, and it was not calculated to promote justice, then there might be some reason for a change. But when such is not the case, and the current of authority sustains the practice, we must adhere to the rule as the settled doctrine of the court. These decisions are conclusive of this case, and the decree of the court below must be affirmed.

*Decree affirmed.*