THE DETROIT COPPER AND BRASS ROLLING MILLS

*v.*

MATTHEW LEDWIDGE *et al.*

| 162 | 305 |
| 71a | 220 |
| 71a | 291 |
| 162 | 305 |
| 83a | 390 |
| 162 | 305 |
| 98a | 1594 |

*Filed at Ottawa March 28, 1896—Rehearing denied October 7, 1896.*

1. ACTION—*a mere contract creditor cannot seek equitable relief.* A mere contract creditor cannot go into equity to enforce his legal demand or to reach equitable estate before he has exhausted his remedy at law for legal demands.

2. CREDITOR'S BILL—*creditor must first reduce his claim to judgment.* A creditor who has not reduced his claim for goods sold to judgment, but has merely obtained an attachment subject to executions of judgment creditors, cannot maintain a bill to discover outstanding debts due the debtor, although he charges fraud and is unable to discover the names and addresses of the debtor's creditors.

3. DISCOVERY—*bill does not lie against debtor to discover names of persons owing him.* A bill will not lie against a debtor to discover the names and addresses of persons indebted to him, as in such case the debtor is a mere witness and his answer would not be evidence against any other person.

*Detroit, etc. Rolling Mills* v. *Ledwidge,* 58 Ill. App. 351, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding.

This is a bill filed in the Superior Court of Cook county by the Detroit Copper and Brass Rolling Mills, a body corporate, against Matthew Ledwidge, doing business under the firm name of Ledwidge & Co., Harry Bennett,

162—20

certain judgment creditors of said Ledwidge, and James Pease, sheriff of Cook county. A general demurrer was filed to the bill, which was sustained by the court below. The complainant took exceptions to the order sustaining the demurrer, and stood by its bill. Thereupon, the bill was dismissed at complainant's costs for want of jurisdiction, and judgment was rendered for costs against the complainant. To this judgment exception was taken. An appeal was prosecuted by the complainant to the Appellate Court, and there the decree of the trial court dismissing the bill, was affirmed. The present appeal is prosecuted from such judgment of affirmance. In allowing the appeal to this court, the Appellate Court granted a certificate of importance.

The bill alleges that said Ledwidge was indebted to the complainant for goods sold to him, in a sum less than $1000.00; that, on the 12th day of January, 1895, complainant began an attachment suit in the county court of Cook county, upon its said claim, against Ledwidge, and caused a writ of attachment to be issued, returnable to the January term, 1895, which writ was levied by the sheriff on the stock of merchandise hereinafter described, subject to the executions hereinafter mentioned; that said attachment suit is still pending; that on January 11, 1895, said Ledwidge had a stock of merchandise worth about $15,000.00, in Chicago; that upon said day certain creditors (not including the complainant) of said Ledwidge, obtained judgments against Ledwidge, in the circuit court of said county, upon judgment notes executed by him to them to an amount, aggregating about $24,000.00, and obtained executions thereon, upon which said executions the sheriff seized said stock and holds it; that complainant and said sheriff have been unable to learn of any other property (except as hereinafter stated) of Ledwidge, upon which said writ of attachment can be levied. The bill further alleges upon information and belief, that said Ledwidge, on or about January 10, 1895,

abandoned his place of business and his stock, and left the State of Illinois, and absconded from his creditors, and is now on his way to Ireland, with intention not to return to Illinois, and with intention to defraud complainant out of its just dues; that large amounts are due to said Ledwidge from divers customers to whom he sold goods on credit, but that the names and addresses of such customers are unknown to complainant, and without discovery are not ascertainable; that said Bennett was an employee of Ledwidge and has in his possession and control, books and accounts of said Ledwidge, showing the names and addresses of said customers, and has knowledge of their names and addresses, and of the amounts owing by them respectively; that by disclosure from said Bennett complainant could find property, rights, credits and choses in action against which to enforce said attachment; that said judgment creditors received from Ledwidge for collection, statements of accounts of amounts due him, and it was agreed, that, after settling their own claims, they were to send balances received to said Ledwidge; and that these amounts they have not yet collected, but are about so to do, and when collected are about, and intend to send him such amounts and deprive complainant of the opportunity of collecting its dues therefrom.  The bill prays, that a receiver be appointed; that a special master be appointed to make assignments to said receiver, of the property, rights and equities of said Ledwidge in Illinois; that said Bennett and said judgment creditors deliver to said receiver said books, accounts and statements, (except as they may hold the same as security for debts), and may make discovery to him for the purposes aforesaid; that said attachment writ and the amounts above stated, as owing from said Ledwidge to complainant, be enforced against any property, rights, credits, choses in action, discovered by virtue of this proceeding; and that complainant may have such other relief as the nature of the case may require.

ROSENTHAL, KURZ & HIRSCHL, for appellant.

S. S. PAGE, and KNIGHT, WAGNER & KENDIG, (WILLIAM E. CHURCH, of counsel,) for appellees.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The creditor filing the bill in this case is a mere contract creditor, who has not reduced his claim to judgment. The bill alleges, it is true, that, before the filing of it, complainant had commenced an attachment suit upon its claim, and caused an attachment writ therein issued to be levied by the sheriff upon a stock of merchandise, belonging to the debtor, worth about $15,000.00, subject, however, to the executions of certain judgment creditors, holding judgments to the amount of about $24,000.00. The bill shows, that the sheriff had seized the stock under the executions before the levy of the attachment writ, so that the liens of the judgments were ahead of the lien of the writ. The only object of the bill seems to be to discover what outstanding accounts or debts are due to the debtor, and to subject the same when discovered to the payment of complainant's claim.

It is the well settled doctrine of this court, that a mere contract creditor cannot come into a court of equity to enforce his legal demand. Chancery will not interfere until the plaintiff has obtained his judgment. Where there is an adequate remedy at law, equity will not lend its aid. In order to show that there is no adequate remedy at law, it must appear that there was a judgment at law, and that execution was issued upon it and returned unsatisfied by the proper officer. A creditor must exhaust his remedy at law before he can come into a court of chancery to reach the equitable estate of his debtor, or to set aside a fraudulent conveyance. (*McConnell* v. *Dickson*, 43 Ill. 99; *Durand* v. *Gray*, 129 id. 9; *Russell* v. *Chicago Trust and Savings Bank*, 139 id. 538). A claim, which is purely legal, involves a trial at law before a jury. To

maintain a bill for the enforcement of such a claim without requiring it to be reduced to judgment at law would be to deprive the debtor of a jury trial upon a question, where, by the rules of the common law, he would be entitled to such trial. (*Gore* v. *Kramer*, 117 Ill. 176; *Scott* v. *Neely*, 140 U. S. 106; *Swan Land, etc. Co.* v. *Frank*, 148 id. 603).

It has been held, that, where a creditor seeks to remove a fraudulent incumbrance, or other obstruction, out of the way of the collection of his debt, he may file his bill as soon as he obtains his judgment; but, where he seeks to reach the equitable assets of the debtor which are not liable to levy and sale under execution, he must not only obtain a judgment at law, but must have execution issued and returned unsatisfied. (*Miller* v. *Davidson*, 3 Gilm. 518; *Shufeldt* v. *Boehm*, 96 Ill. 560).

In all cases, where resort to equity has been allowed without first obtaining judgment, "the claim of the complainant has had some equitable element in it,—such as a trust, or the like." (*Dormueil* v. *Ward*, 108 Ill. 216; *Gore* v. *Kramer, supra*). But we are unable to see, that the claim set up in the case at bar has any equitable element in it, being an indebtedness for goods sold and delivered, and, therefore, a purely legal claim.

If any of the allegations of the present bill amount to a charge of fraud, it is sufficient to say, that a bill in equity will not lie for the purpose of procuring relief against fraud, at the suit of a creditor who has never reduced his demand to judgment. (*Shufeldt* v. *Boehm, supra*). Unless the creditor has obtained judgment, so as to have "a certain claim upon the property of the debtor, he has no concern with his frauds." (*Dewey* v. *Eckert*, 62 Ill. 218).

In *Greenway* v. *Thomas*, 14 Ill. 271, a creditor filed a bill to set aside a fraudulent assignment alleged to have been made by his debtor, alleging that said debtor had left the country so that process could not be served upon him, and that the complainant had sued out an attachment and placed it in the hands of the sheriff; it was

there held, that the lower court properly sustained a demurrer to the bill and dismissed it; that there was a remedy at law, because the attachment suit could have been prosecuted to judgment, or the complainant could "have garnisheed the debtors of the assignors."

In *Bigelow* v. *Andress*, 31 Ill. 322, Bigelow and others, creditors, filed a bill against Andress, and his father, and one Earl, *alleging,* that Andress was indebted to them for goods sold; that they had caused an attachment to be issued against his property, and had served the same by summoning Earl as garnishee; that Andress had left for parts unknown, and had made a fraudulent sale of his assets to his father; that Earl was disposing of the goods as the father's agent; and *praying* that a receiver be appointed; that the sale be set aside and the goods sold to pay the indebtedness; and that the defendants be enjoined from further disposing of the goods; it was there held, that no lien was acquired upon the property in the hands of the garnishee which would authorize a court of equity to interfere; that there was a complete remedy at law, and, this being so, equity would not entertain the bill on account of the alleged fraud in the sale; that the complainants, having no judgment, execution or even a lien on the property, occupied the same situation as any other simple creditor; and that their footing in a court of equity was no "better or different than if the attachment had not been sued out." It was there said (p. 335): "The complainant must first establish his claim at law before a court of equity will lend its aid. And it is for the reason that a court of chancery does not assume jurisdiction to settle and establish purely legal rights. If jurisdiction were entertained in this case to ascertain the legal validity of complainant's demand, it being wholly of a legal character, so as to afford relief against obstructions that would afterwards present themselves to an execution, no reason is perceived why such jurisdiction might not be assumed in all cases where legal demands might be

so obstructed. This would be an innovation on the settled practice of this court, as well as the chancery practice generally. Whatever may have been held in other courts, we regard this as the practice of this court, too long and too firmly settled to be departed from simply because it may have been differently held in some other tribunals."

In *Dewey* v. *Eckert, supra,* it was said (p. 220): "The causes of action set forth in the bill were mere legal demands. * * * Eckert should first have reduced his demand to a judgment before he could come into a court of equity and question the disposition of the debtor's property. * * * The payments of money by Eckert, alleged in the bill, gave him an action for money paid, but created no lien or trust that authorized a court of equity to render the real estate liable on account thereof, and the court had no power to create a lien beyond the general one which follows from a decree for the payment of money. It could only recognize and enforce a lien created by the act of the parties, and they created none. Our law does not recognize equitable attachments."

The bill, it will be noticed, does not aver, that either Bennett, who is alleged to have had control of the books of Ledwidge, or the judgment creditors, who are alleged to have received accounts to be collected with a view of sending the balance of the collections to Ledwidge after satisfying their own claims, were served with summons as garnishees in the attachment suit. If they had been served with garnishee process, no lien would have been thereby created upon any property in their hands, which would justify the filing of this bill. (*Bigelow* v. *Andress, supra*).

Counsel for appellant say, that they could not serve with garnishee process the persons owing the accounts to Ledwidge because appellant did not know their names and addresses, but that appellant had a right to file this bill for the purpose of discovering such names and ad-

dresses.   In the first place, under section 49 of the Chancery act, a creditor, who desires to file a bill in chancery against the debtor and any other person to compel the discovery of any property or thing in action belonging to the debtor, must first procure a judgment at law upon his claim, and have an execution thereon issued and returned unsatisfied in whole or in part.   (1 Starr & Cur. Stat. p. 414; *Durand* v. *Gray, supra*).   In the second place, it may be said here, as it was said in *Bigelow* v. *Andress, supra* (p. 333):   "We are unable to perceive anything to prevent the suit at law from progressing to its final determination, precisely as attachment suits always do. If discovery is desired, it can be as effectually had by the answer of the garnishee as by his answer to a bill.   The interrogatories propounded to him may be made as searching and efficacious as if they were contained in a bill." In the third place, counsel for appellant say, that they had no remedy by garnishment, because garnishment will suffice to make the garnishees disclose what *they* owe to the debtor, but "will not suffice to make the garnishee disclose what *some other person* owes to the absconder." Under this aspect of the bill viewed as a bill of discovery, its object is merely to secure evidence, and, to that end, the defendants are mere witnesses.   "It is ordinarily a good objection to a bill of discovery, that it seeks the discovery from a defendant who is a mere witness, and has no interest in the suit; for, as he may be examined in the suit as a witness, there is no ground to make him a party to a bill of discovery, since his answer would not be evidence against any other person in the suit." (2 Story's Eq. Jur. secs. 1489, 1499).

For the reasons here stated, we think, that the demurrer to the bill was properly sustained, and that there was no error in dismissing it.

The judgment of the Appellate Court is accordingly affirmed.                                      *Judgment affirmed.*