## THE HONOLULU BREWING AND MALTING COMPANY, LIMITED, A CORPORATION, *v.* CHARLES G. BARTLETT AND FRED HARRISON.

### No. 917.

APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

HON. C. W. ASHFORD, JUDGE.

ARGUED MARCH 9, 1916.              DECIDED MARCH 20, 1916.

ROBERTSON, C.J., WATSON AND QUARLES, JJ.

EQUITY—*pleading—demurrer.*

A bill in equity to restrain the defendant from selling or otherwise disposing of his property unless he satisfies or secures the payment of an unsecured promissory note given by him, which note has not matured, wherein it is alleged that the defendant is absent from the Territory, a fugitive from justice, does not intend to return to the Territory, and is selling and disposing of his property in the Territory to evade payment of such note and to defraud the payee and other creditors, does not state facts sufficient to entitle the plaintiff to the relief sought, and a demurrer on that ground should be sustained.

SAME—*fraud—creditor's bill—discovery.*

A court of equity will not entertain a creditor's bill which seeks relief from a fraudulent conveyance, made or contemplated, and a discovery of assets of the debtor in the hands of others, in advance of the maturity of the creditor's demand, especially where the creditor has no lien on the property conveyed or about to be conveyed. The maturity of the creditor's claim in such case is a condition precedent to the granting of such relief.

OPINION OF THE COURT BY QUARLES, J.

The plaintiff, a domestic corporation, filed in the first judicial circuit December 8, 1915, against the defendants Bartlett and Harrison, its bill in equity, wherein it alleges that on the 27th day of April, 1915, the defendant Bartlett executed and delivered a certain promissory note of that date for the sum of $1555.20 to one T. A. Marlowe, said note being payable to the order of said Marlowe two years after date; that on the 29th day of September, 1915, the said Marlowe assigned the said note to the plaintiff without recourse; that the plaintiff, for a valuable consideration, became the owner and holder of said note; that on the 8th day of May, 1915, the defendant Bartlett absconded and left the Territory of Hawaii and thereafter was indicted on six charges, four for embezzlement, one for forgery and one for uttering forged paper; that bench warrants for the arrest of the defendant Bartlett duly issued but have not been served, the said defendant being absent and a fugitive from justice and does not intend to return to Hawaii; that said defendant left without the intention of returning and did not make any provision for the payment of said note, and plaintiff verily believes that said defendant does not intend to pay said note or any part thereof; that, on information and belief, plaintiff alleges that said defendant intends to dispose of all his real and personal property in the Territory of Hawaii before said note becomes due and payable and intends to cheat and defraud this plaintiff out of the full amount of said note which the plaintiff now owns and holds and to prevent which the plaintiff has no remedy at law; that the said defendant owns certain described real property in Honolulu, mortgaged to the Bank of Honolulu to secure an indebtedness in the sum of $17,500. The bill then alleges that the defendant Bartlett, on May 5, 1915, executed and delivered to his codefendant

Harrison a power of attorney containing general powers, among others, to sell and convey real estate; that on May 15, 1915, the said defendant Harrison, acting under said power of attorney, executed, with the wife of said defendant Bartlett, to one O. A. Steven, an option to purchase said real property at the sum and price of $20,000, of which purchase price the receipt of $500 was in said option acknowledged. The bill further alleges that the defendant Bartlett owns certain money and personal property in the hands of the defendant Harrison, the amount, description and value of which is unknown to the plaintiff; that said defendant Bartlett has sold and disposed of the most of his personal property, including his household furniture, and is now in the Republic of Mexico, does not intend to return to Hawaii, and intends, through his said attorney-in-fact, the defendant Harrison, to sell and dispose of all of his property in Hawaii for the purpose of cheating and defrauding the plaintiff and other creditors of their just dues, and plaintiff fears that it will lose the whole amount of said promissory note. Plaintiff in its said bill propounds a number of interrogatories to the defendant for the purpose of ascertaining and discovering the amount, description and value of all personal property in the hands of said defendant Harrison, owned by defendant Bartlett, and prays for such discovery, for an injunction restraining the defendants from selling and disposing of any property in Hawaii owned by defendant Bartlett until provision is made for the payment of said note to the plaintiff, and for general equitable relief.

Upon filing the bill a circuit judge in said circuit made an order requiring the defendants to appear on the 11th day of December, 1915, and show cause, if any they could, why said injunction prayed for should not issue, and requiring the defendant Harrison to appear before said judge on the 23rd day of December, 1915, and show cause, if any he

could, why he should not answer the said interrogatories propounded in the said bill. The circuit judge made an order restraining the defendants, *pendente lite,* from selling, disposing or encumbering any property in Hawaii belonging to the defendant Bartlett.

To the plaintiff's bill the defendants filed their several demurrers upon the ground that said bill does not state facts sufficient to entitle the plaintiff to the relief demanded, either by injunction or by a discovery, and that the circuit judge, sitting in equity, has no power to grant the relief demanded by the plaintiff in its said bill. These demurrers were overruled by the circuit judge, and from the order overruling the said demurrers an interlocutory appeal was requested by the defendants and allowed by the circuit judge, and upon such interlocutory appeal the cause is before us. We must either affirm or reverse the order overruling the said demurrers.

The controlling question here is: Has a court of equity in this jurisdiction, under the allegations of fact contained in the bill, power to restrain a debtor from selling and disposing of his property unless he gives security for a debt not yet due? The note alleged in the bill will not be due until April, 1917. It was taken by the original promisee without security, and the obligation of payment, by agreement of the parties, postponed for a period of two years. The note is negotiable in form. In other words, the promisee impliedly agreed to wait two years for payment without security. Under the allegations of the bill the inference arises that when the plaintiff took the assignment of the note without recourse it knew that Bartlett had absconded, knew that he had been indicted for embezzlement, knew that he did not intend to return, and knew that he was selling and disposing of his property in Hawaii, as the allegations of the bill show that these things had occurred prior to the assignment of the note in question to

the plaintiff, and there is no allegation in the bill that these things, or any of them, were unknown to the plaintiff. Is the plaintiff in any better condition than the original promisee? It does not claim to have a lien on the property of the defendant Bartlett in this jurisdiction. It is simply asking that the defendant Bartlett be denied by injunction the right, which is inherent in every man, to make contracts, to acquire, sell and otherwise dispose of property. Here equity is appealed to to tie up Bartlett's business; to prevent him from selling or disposing of his property; to hold it, how long? Until the plaintiff's debt matures, some eighteen months? No, not if Bartlett will give security that he will pay the debt when it matures, but to tie his property up until he does give such security. When the note was given there was not, so far as the allegations of the bill are concerned, any agreement, express or implied, on the part of the promisor that he would not sell his property; or that he would not leave the jurisdiction of Hawaii to remain out of it the remainder of his natural life; or that he would not remove his property from the jurisdiction of Hawaii. Has equity the power to tie the hands of the defendant Bartlett with respect to selling and disposing of his property unless he does something not required by his contract with the assignor of plaintiff, but contrary to that contract, namely, give security for the payment of the note mentioned in the bill of complaint? Equity follows the law, does not oppose the law; it assists parties in the protection of their legal rights when the law is unable to do so; it protects the vigilant, but does not invade private fundamental rights to impose under a contract obligations not assumed in such contract, either by express terms or by necessary implication. To grant the relief sought by plaintiff would be to impose new obligations not contemplated either by the promisor or the promisee when the note in question was given, and to say

to the promisor, notwithstanding the promisee agreed that you should have the use of the money for which such note was given for the period of two years without security, you are now, because you have left this jurisdiction, because you do not intend to return to Hawaii and do not intend to pay this note when it does mature, required to give security that you will pay it when it becomes due or else you are restrained from selling and disposing of your property in Hawaii. This would be the exercise of a very broad power and one which we cannot admit exists except it be upon clear and undoubted authority recognized in equity jurisprudence as ample justification for the exercise thereof. Do the authorities justify the exercise of such power?

Our law permits suits to recover debts that are due, that have matured. Prior to judgment an attachment may be obtained to reach property subject to execution, and other property, money, choses in action and securities in the hands of an agent or trustee may be garnisheed and held to await the termination of the action. Why did not the plaintiff avail itself of these legal steps to secure the said promissory note? Simply because the note is not due, and by agreement of the parties thereto the promisor is not required to pay it prior to April, 1917. By implied agreement the assignor of the plaintiff postponed payment and waived security for the payment of the note, hence cannot attach the property of the defendant Bartlett in the Territory nor garnishee any property, money or credits that he may have in the hands of the defendant Harrison or others. In enumerating the powers of circuit judges, sitting in equity, section 2473 R. L., among others, in relation to actions by creditors, provides: "Bills by creditors to reach and apply in payment of a debt, any property, right, title or interest, legal or equitable of a debtor, within this Territory, which cannot be come at to be attached or taken on execution in a suit at law, against such debtor." The prop-

erty of Bartlett, named in the bill of complaint, can "be come at to be attached or taken on execution in a suit at law" against him by a creditor, and if plaintiff could sue on the note aforesaid it could reach said property by attachment, garnishment or execution. The only thing in the way of plaintiff's doing so is the agreement of its assignor to wait until April, 1917, without security for payment of said note. Equity steps in and assists where law, when resorted to, is powerless, but refuses to assist by canceling fraudulent transfers of property by a debtor prior to the maturity of his debt in order to assist the collection of the debt when it shall mature. It is a necessary condition precedent to invoking the aid of equity in such cases that the debt be due (*Freider* v. *Lienkauff,* 8 So. 758; *Jones* v. *Massey,* 79 Ala. 370; *Evans* v. *Thornburg,* 77 Ind. 106; *McGhee* v. *Importers' and Traders' National Bank,* 9 So. 734; *Simon* v. *Ellison,* 22 S. E. 860). The rule is general that creditors who have not exhausted their legal remedies cannot resort to equity for assistance, and must therefore reduce their claims to judgment and generally must have execution issued and returned unsatisfied, thus demonstrating to a certainty the need of aid in equity (*Middleditch* v. *Kalanianaole,* 18 Haw. 272; *Hatch* v. *Daugherty,* 145 Mich. 569; *State Bank* v. *Knox,* 1 Dev. & B. Eq. 50, *Bethell* v. *Wilson,* 1 Dev. & B. Eq. 610; *Phelps* v. *Foster,* 18 Ill. 309; *Wiggins* v. *Armstrong,* 2 Johns Ch. 144; *Detroit Copper and Brass Rolling Mills* v. *Ledwidge,* 162 Ill. 305; *Tate* v. *Liggat,* 2 Leigh 91; *Roan* v. *Winn,* 93 Mo. 503; *Hood* v. *Saunders,* 11 Colo. 106; *Moore* v. *Omaha Life Ass'n.,* 62 Neb. 497; *Neuman* v. *Dreifurst,* 9 Colo. 228; *Viquesney* v. *Allen,* 131 Fed. 21; *Taylor* v. *Bowker,* 111 U. S. 110; *National Tube Works Co.* v. *Ballou,* 146 U. S. 517, 523; *Scott* v. *Neely,* 140 U. S. 106, 115; *Swan Land & Cattle Co.* v. *Frank,* 148 U. S. 603, 612). To this general rule there are some exceptions, for instance: Where the

creditor has a lien on, or equitable interest in, the property of his debtor which is in danger of being lost (*Case* v. *Beauregard,* 101 U. S. 688; *Ober* v. *Gallagher,* 93 U. S. 199, 208; *Cates* v. *Allen,* 149 U. S. 451, 461); or, the debtor's estate is a mere equitable one which cannot be reached by any proceeding at law (*Case* v. *Beauregard, supra; Day* v. *Washburn,* 24 How. 352; *Wyman* v. *Wallace,* 201 U. S. 230, 242); or, the debtor is a partnership (*Nelson* v. *Hill,* 5 How. 127; *Hollins* v. *Brierfield Coal etc. Co.,* 150 U. S. 371, and other authorities). The plaintiff has not shown in its bill that it comes within any of the exceptions to the general rule and does not claim that it has any lien upon, or equitable interest whatever in, the property of the defendant Bartlett. We are of the opinion that granting the relief sought by plantiff's bill would be an unwarranted invasion of fundamental rights. If, as the authorities hold, a creditor whose debt is not due, who has not exhausted his remedies at law, cannot come into a court of equity and attack a conveyance theretofore fraudulently made, there is more reason in holding that he shall not be permitted to come into such court and seek the aid of the chancellor in tying his debtor's hands for the purpose of preventing the making of such a conveyance.

The Virginia court in *Tate* v. *Liggat, supra,* at page 99, has well said: "It is admitted to be well settled, as a general rule, that a creditor at large (one who has not in some way acquired a right to have satisfaction out of his debtor's property, specifically), cannot come into a court of equity to impeach any conveyance made by his debtor on the ground of fraud, and, consequently, that the court of chancery had no jurisdiction in the first of these suits, unless, as it was insisted by the counsel for the appellees in that suit, the rule is liable to exceptions, within one of which this case falls. The rule is founded upon the principle of the common law, essential to the enjoyment and circu-

lation of property, that every debtor, until his property is specifically bound to the satisfaction of his debt, by his own agreement or by some judicial proceeding, has an absolute right to dispose of it at pleasure, to prefer one creditor to another, or even to waste or destroy it; a power which no tribunal whatever has authority to control or limit. The obligation of a debtor is purely personal and in no way affects his property or any portion of it; and so long as his person is amenable to the process of the courts of justice there are no means of reaching or affecting his property but through that medium, and after judgment or decree against him personally."

In our opinion the bill presents no equity, and the facts alleged therein are not sufficient to entitle plaintiff to the relief demanded, wherefore the demurrers of the defendants to the said bill should have been sustained.

The order overruling the said demurrers is reversed with costs to the appellant and the cause remanded for further proceedings consistent with the views herein expressed.

*C. S. Davis* (*G. A. Davis* with him on the brief) for plaintiff.

*W. B. Lymer* (*Lindsay & Lymer* on the brief) for defendants.