## Joseph R. Pearson et al., Appellees, v. Tucson Farms Company et al., Appellants.

### Gen. No. 23,019.

1. ATTACHMENT, § 4*—*right to equitable attachment.* An equitable attachment cannot be sustained.

2. RECEIVERS, § 3*—*when receiver appointed for benefit of unsecured creditor.* There must be some exceptional equity to permit a receivership for the benefit of an unsecured creditor who has obtained neither judgment nor decree.

3. RECEIVERS, § 2*—*when not appointed because of existence of other remedy.* Where a complainant's claim is purely a legal demand and has no equitable element in it, *held* that a bill in equity for a receiver will not lie.

4. CORPORATIONS, § 553*—*when grounds for appointment of temporary receiver do not exist.* Where a bill was filed for an accounting for commissions claimed to be due on certain sales of real estate and for a receiver of a corporation, alleging that the accounts between the parties were complicated and intricate and that it was impracticable for a jury to determine same, and that the defendant corporation was insolvent, *held* that no ground for appointment of a temporary receiver was shown.

Appeal from the Circuit Court of Cook county; the Hon. JESSE A. BALDWIN, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1916. Reversed and remanded. Opinion filed March 8, 1917.

BURRY, JOHNSTONE & PETERS, for appellants.

MATHIAS & SULLIVAN, for appellees.

MR. JUSTICE TAYLOR delivered the opinion of the court.

This is an appeal by the Tucson Farms Company, *et al.*, appellants, from an interlocutory order entered without notice on November 29, 1916, appointing a receiver "of all the property, equitable interests, things

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

in action and effects situated in the State of Illinois, of the Tucson Farms Company," and also providing that "the defendants deliver over to said receiver all property and effects of said defendant, Tucson Farms Company, a corporation, and pay to said receiver all rentals accruing for the use and occupation for Lots 9, 10, 11 and 12   *   *   *   as the same become due and payable, until the further order of the court."

The original bill of complaint was filed November 20, 1916, and made defendants (among others) the Tucson Farms Company, an Arizona corporation, the officers, directors and stockholders of that company and Isaac S. Haight, in whose name said Illinois real estate of the Tucson Company stands. The order appointing the receiver was entered the day the bill was filed and recites that it was entered without notice to the defendant and upon the sworn bill of complaint and affidavit accompanying the same.

The bill of complaint is one for an accounting for commissions claimed to have been earned by the selling of real estate of the Tucson Farms Company between the months of January, 1915 and January, 1916. It alleges that there were upwards of seventy-five distinct sales of land made through complainants' efforts; that according to the best information they have there is now due them $96,000; that the account between them and the defendant corporation is complicated and the true balance due them cannot be ascertained except upon an inspection and investigation of the books, contracts and papers in the possession of the defendant corporation and that the account is so complicated and intricate that it would be impracticable and unsatisfactory for a jury to ascertain the true amount due.

In addition to the allegations pertaining to the complainants alleged right to have an accounting, the bill of complaint contains an elaborate series of allegations which, taken together, are in the nature of a cred-

itor's bill. In other words, the bill of complaint seeks, first, an accounting for commissions claimed to be due complainants; and second, seeks to sequester equitable assets to satisfy a prospective decree. The principal allegations of the bill of complaint, that we assume were considered by the chancellor as a sufficient basis for the receivership, are as follows: that the defendant company is insolvent; that the lands owned by it situated in the State of Arizona are incumbered by a trust deed or mortgage to secure the payment of certain bonds of said company; that the said incumbrance of said lands is equal to or in excess of the full cash market value of said lands; that the said company is also indebted to numerous unsecured creditors; that the bonds of the company are chiefly owned and held by the stockholders thereof; that officers, agents and stockholders of said company, who are also bondholders thereof, have stated that the rights of the general and unsecured creditors of said company are academic questions and have threatened to foreclose the said trust deed against said Arizona lands for the purpose of preventing said general creditors from collecting their just demands, and are conspiring and confederating together for the purpose of defrauding the said general creditors and preventing them from collecting their said claims and have stated that the affairs of said company would be so conducted that the complainants would never be able to collect their claims and, by stating to the complainants that said company was insolvent and that the complainants would never be able to collect any judgment obtained against said company, have endeavored to induce the complainants to accept in full satisfaction of their just demands a small fractional portion thereof; that formerly the said company carried bank accounts in several Chicago banks but that after the complainants had demanded a settlement, for the purpose of preventing

complainants from obtaining a lien upon said funds by garnishment or otherwise, removed said funds from said banks and out of the jurisdiction of the courts of this county; that the stockholders, who are also bond-holders of said company, have already used the power of their position to induce certain unsecured creditors to settle their claims for inadequate consideration; that by threats to foreclose said trust deed certain banks were induced to settle claims for $1,200,000 for a very small consideration.

The allegations in regard to irreparable injury are that unless a receiver is appointed, without notice, for the aforesaid real estate, the complainants will suffer irreparable injury and the right of the complainants will be unduly prejudiced and the said defendant corporation will cause said property to be conveyed or otherwise disposed of so as to prevent its general creditors in the State of Illinois from obtaining any satisfaction of their claims out of the assets of said corporation situated in the State of Illinois.

The bill was filed on behalf of the complainants and the domestic creditors in Illinois who might desire to join in the proceedings. Certain stockholders, officers and directors are made defendants and their individual liability for the amounts found due the complainants asserted on the ground that their stock was not fully paid, and that the debts exceeded the capital stock. The bill of complaint also contains the allegation that the Tucson company took in exchange for some of its Arizona lands the tract of land above mentioned and took title thereto in the name of Isaac Haight for the sole use of the Tucson company; that the property is worth approximately $75,000 and is incumbered by a trust deed to the Chicago Title & Trust Company for $51,000 and that said property is the only property of the Tucson company in the State of Illinois, and that Haight is a resident of Longwood, Texas.

The bill prays an accounting and decree for the amount that may be found due complainants and for a receivership, without notice, of the real estate and all other property of the Tucson Farms Company in the State of Illinois.

On the day the bill was filed the chancellor appointed a receiver "of property, equitable interest, things in action and effects situated in the State of Illinois of the Tucson Farms Company."

It is contended by the appellant that a receiver will not be appointed by a court of equity at the request of a mere claimant who has not reduced his claim to judgment and who seeks to have property held in the custody of the court to satisfy a decree that he hopes to obtain in the future; that the appointment of the receiver without notice is reversible error.

An anticipatory receivership for the prospective benefit of an alleged unsecured general creditor, without judgment and without notice, seems to be unknown to our law. The complainants ask the court to assume that at the end of an accounting it will be proven and adjudicated that he is a creditor, and also ask the court to assume that it will be proven and adjudicated that certain frauds have been perpetrated by the defendants, and then, as a result of those assumptions, it is urged that the court ought now, in anticipation of the result and merely upon the face of the bill, take all the property of the defendants located in the State of Illinois and sequester it by means of a receiver for a future uncertain use. Complainants here seem to request something in the nature of an equitable attachment. It is the law, however, in this State that an equitable attachment cannot be sustained. In *Phelps v. Foster,* 18 Ill. 309, Mr. Justice Caton, said:

"I am not aware of any principle of equity jurisprudence which will justify the issuing an injunction in such a case, to compel the parties to hold the goods

pending a trial at law, to see if they will not be wanted to answer an execution upon a judgment which the complainant hopes to obtain."

In *Bigelow v. Andress,* 31 Ill. 323, the court announced: "And we are not aware that it has ever been seriously contended that an equitable attachment could be sustained," and in *Dewey v. Eckert,* 62 Ill. 219, Mr. Justice Sheldon said: "Our law does not recognize equitable attachment. *Bigelow v. Andress,* 31 Ill. 323." The foregoing cases were cited with approval by Mr. Justice Magruder in *Detroit Copper & Brass Rolling Mills v. Ledwidge,* 162 Ill. 305, and in expressing the reason of the court in that case he said:

"In all cases, where resort to equity has been allowed without first obtaining judgment, 'the claim of the complainant has had some equitable element in it, —such as a trust, or the like.' * * * But we are unable to see that the claim set up in the case at bar has any equitable element in it, being an indebtedness for goods sold and delivered, and, therefore, a purely legal claim.

"If any of the allegations of the present bill amount to a charge of fraud, it is sufficient to say, that a bill in equity will not lie for the purpose of procuring relief against fraud, at the suit of a creditor who has never reduced his demand to judgment. * * * Unless the creditor has obtained judgment, so as to have 'a certain claim upon the property of the debtor, he has no concern with his frauds.'"

It would seem, therefore, that there must be some exceptional equity in order to permit a receivership for the benefit of an unsecured creditor who has obtained neither judgment nor decree. *Dormueil v. Ward,* 108 Ill. 216. In *Ladd v. Judson,* 174 Ill. 344, the court points out that it is necessary, in order that the complainant bring himself within the scope of the exception, to show that his demand is of such an equitable character that it can only be established in a court of chancery. The law seems to be that where the

complainants' claim is a purely legal demand and has no equitable element in it the bill will not lie. In the instant case, complainants' claim is merely for commissions. It is true the complainants charge the defendants with a variety of fraud, but that subject only becomes involved when it is determined what, if any, commissions may be due the complainants. There is no equitable element in complainants' claim. Instead of suing at law in assumpsit, they have gone into equity on the ground that the account is complicated. As regards commissions, there is no trust relationship of any kind between complainants and defendants; their relations are merely those of alleged creditor and debtor, arising out of an express contract for commissions. There is outstanding no trust in favor of the commissions, nor have complainants a lien upon any property. It is contended by the complainants that, as the bill alleged the insolvency of the defendant company, its property thereupon became a trust for its creditors and that, therefore, equity would take hold and administer the trust. We do not find, however, that any such principle is applicable to this case. *Hollins v. Brierfield Coal & Iron Co.*, 150 U. S. 371. In the latter case, Mr. Justice Brewer says:

"While it is true language has been frequently used to the effect that the assets of the corporation are a trust fund held by a corporation for the benefit of creditors, this has not been to convey the idea that there is a direct and express trust attached to the property. * * * It is rather a trust in the administration of the assets after possession by a court of equity than a trust attaching to the property, as such, for the direct benefit of either creditor or stockholder."

We think there was plain error in appointing a receiver of the property mentioned and therefore the order appealed from is reversed.

*Reversed and remanded.*