# HENRY WATERHOUSE TRUST COMPANY, LIMITED, TRUSTEE UNDER THE WILL AND OF THE ESTATE OF KALEIPUA KANOA, DECEASED, *v.* SAMUEL W. KING, TRUSTEE OF THE MALOLO HEIGHTS LAND TRUST, ET AL.

## No. 2105.

Argued October 16, 1933.  Decided March 12, 1934.

Perry, C. J., Banks and Parsons, JJ.

OPINION OF THE COURT BY PERRY, C. J.
(Banks, J., dissenting.)

This is a suit in equity to foreclose a mortgage and to subject to the payment of any deficiency judgment that

may be rendered unpaid subscriptions due from so-called "shareholders" to the mortgagee (Samuel W. King, trustee) in connection with a "business trust." To an amended bill the respondents, other than the trustee, demurred and the demurrer was sustained by the circuit judge. From the decree sustaining the demurrer the case comes by appeal to this court.

The allegations of the bill as amended are as follows: That Samuel W. King, one of the respondents, is the trustee of the Malolo Heights Land Trust, under a certain declaration of trust dated April 7, 1926; that the other respondents are "owners and holders" of shares in said Malolo Heights Land Trust and then were and now are beneficial owners in the property remaining under the mortgage which it is now sought to foreclose; that certain of the shares of the trust were paid for in full but that certain others of said shares, held by the respondents, other than the trustee, have not been paid for in full; that the respondents, other than the trustee, are now liable to the trustee for the unpaid balances on their shares; that the amounts owing by each of the respondents, other than the trustee, upon their subscriptions are respectively as set forth in paragraph four; that on April 5, 1929, King, trustee, with the consent and approval of the executive committee of the trust, in consideration of $37,000 loaned to him by the Henry Waterhouse Trust Company, Limited, executed and delivered to that company a promissory note in the sum of $37,000 payable in two years with interest at the rate of eight per cent per annum, payable quarterly, and with the express stipulation that "if default shall be made in the payment of any installment of interest when due, the whole amount of the principal of this note shall at once become due and payable at the option of the holder thereof;" that concurrently

with the execution and delivery of the note the trustee executed and delivered to the same company a mortgage on certain parcels of land to secure payment of the note; that by instrument dated June 29, 1929, the company, in consideration of the payment to it of the amount then secured by the mortgage, did assign and transfer to the complainant in the present suit the note and the mortgage and that the complainant is now the owner and holder of the note and mortgage; that there was later a default in the payment of interest and in the payment of taxes and street assessments and that by reason of these defaults the whole amount secured by the mortgage, both principal and interest, became and is due and payable; that the liabilities of the trustee and of the trust estate represented by him "exceed the assets;" that the trustee and the trust estate are insolvent; that "the present value of said mortgaged property is considerably less than the amount due under said mortgage, and insufficient to satisfy the indebtedness due to complainant so that recourse will have to be had to whatever equitable assets said trustee and the trust estate may have;" and that "the unpaid balances on the shares owned by said respondents" other than King as trustee, "were duly called by said trustee by the direction of the shareholders on May 1, 1931, but said respondents have failed to pay the same."

In the declaration of trust executed by the trustee and made a part of the petition the trustee declares that he holds the property of the trust upon the trusts therein set forth. It is therein recited that the property acquired by the trustee is valued at $60,000 and that the beneficial interest therein shall be represented by sixty shares of the par value of $1000 each. The trustee is to use the proceeds of the shares for the purpose of acquiring the trust property and for reimbursing himself for his expend-

itures and obligations in the course of the trust, the surplus, if any, of the proceeds of the shares to be used for other purposes of the trust. "Assessments on unpaid shares shall become due at such times as the trustee and the executive committee shall decide," with certain limitations now immaterial. Power is given to the trustee to sell delinquent shares. "The trustee shall hold the legal title to all property * * * and shall, subject to the limitations hereinafter contained, have and exercise full control, management and the sale and disposition thereof. * * * Shareholders shall not have any legal right, title or interest in or to the trust property or any right to call for a partition or division, or * * * for a distribution or conveyance of the same. * * * The trustee shall have no power to bind the shareholders personally (and reference shall be made to the declaration of trust in every written contract into which he shall enter involving liability) and all persons and corporations contracting or dealing with the trustee shall look to the funds and property of the trust for payment under any contract, covenant or obligation or dealing or for the payment of any debt, mortgage, judgment or decree or of any money that may otherwise become due or payable, whether by reason of failure on the part of the trustee to observe or perform any contract or obligation or otherwise, and neither the trustee nor the shareholders, present or future, hereunder shall be personally liable therefor, beyond the amount of what may be due upon the share or shares owned by him. It is hereby also expressly declared and agreed that a trust and not a partnership is hereby created, and that neither the trustee nor the shareholders shall be liable hereunder as partners." An executive committee of five is provided for "to facilitate the control, management, and disposition of the trust property and the execution

of the trust in the interests of the shareholders * * *
who shall have and exercise all powers respecting the
trust property other than those delegated to the trustee
or reserved to the shareholders." Among the powers ex-
pressly conferred upon the trustee is that he may "levy
assessments on the unpaid shares of the shareholders
until the full par value of such share has been paid" and
may "borrow money for the purposes of the trust from
any person, firm or corporation, including the trustee,
and mortgage or pledge the trust property or any part
thereof as security for any such loan or loans; pay out
of any available funds any indebtedness incurred for the
purposes of the trust." It is also provided that "if the
trustee shall at any time for any reason be * * * under
* * * any individual liability as such trustee not due
to his acts or omissions in bad faith, he shall be saved
harmless and indemnified out of the trust property from
and against all loss, costs, damage or expense by reason
of such liability."

The mortgage is in ordinary form and authorizes,
upon default, foreclosure by suit in equity, by entry in
possession or by advertisement and sale.

The demurrers are by the respondents other than the
trustee and question the sufficiency of the allegations of
the bill to authorize the relief sought against the respond-
ent shareholders who have not paid their subscriptions
in full, that relief as prayed for being that their debts
to the trustee in that behalf be subjected to the pay-
ment of any deficiency judgment that may be obtained by
the complainant against the trustee. The consideration
of this case upon the present appeal proceeds, as it must,
upon the assumption that the allegations of the amended
bill are true. Upon the demurrer they must be deemed
to be true. There is no pleading before the court denying

or in anywise qualifying any of the facts as set forth in the petition. The case presented is therefore that of King, trustee, who borrowed, as he was authorized to do, from the complainant's predecessor in interest the sum of $37,000 and to secure the loan gave a mortgage on certain land. He also gave a note in the sum of $37,000. In the trust instrument the shareholders, while cautioning those with whom the trustee dealt that they would not be liable beyond the amount of their unpaid subscriptions, at the same time held out to those with whom the trustee dealt that they would be liable to the extent of their unpaid subscriptions. Speaking always of the admitted allegations of the petition, it cannot be doubted that as a matter of justice and equity the debts of the defaulting shareholders should be subjected to the payment of any unsatisfied deficiency judgment which the complainant may obtain. The question before the court is at the utmost whether the complainant has adopted the correct procedure to accomplish that result. The bill is one to foreclose a mortgage. It also partakes of the nature of a creditors' bill to reach equitable assets of the mortgagor. The only contentions advanced by the respondents in support of their demurrers are the following: (1) That "the present proceeding bears no resemblance to a creditors' bill, but on the contrary seeks a preference and a satisfaction of complainant's claim to the exclusion of all other creditors;" (2) that "complainant has not obtained a judgment of law nor exhausted its legal remedy, nor does it appear impossible or impracticable so to do;" (3) that "regardless of the law in other jurisdictions, it is settled in Hawaii that insolvency of the debtor does not excuse a creditor from reducing to judgment before resorting to equity for aid to collect the same;" and (4) that "the allegation that the property

of a trust can not be reached in an action at law, but the only remedy is in equity * * * is not law in Hawaii regardless of the Massachusetts decisions."

Under the first of these it is claimed more specifically that the complainant alone cannot maintain a creditors' bill but can maintain it, if at all, only in behalf of himself and all other creditors similarly situated. It is to be noted that in the case at bar no express trust has been created with reference to the unpaid subscriptions of the shareholders. They are debts which constitute an asset in the hands of King, trustee, for the payment of the debts of the trust as represented by himself and if they cannot be reached in an action at law they certainly can be reached for that very reason in a suit in equity as equitable assets of the main respondent. It is unnecessary for the purposes of this opinion to say whether if there are other creditors of the trustee the present complainant must share with them the proceeds of the present suit. It does not appear that there are any other creditors. There is no express allegation to the effect that there are and the only allegation which is claimed to indicate the existence of other creditors does not bear out the claim. That allegation is that "the liabilities" of the trustee "exceed the assets." That allegation is entirely consistent with the view that the complainant's is the only claim outstanding against the trustee. If there are other creditors they can come in by intervention and, if they are entitled to have their claims satisfied out of the same equitable assets that the complainant is pursuing, their claims can be adjusted in this proceeding.

While the ordinary rule is that a creditors' bill cannot be maintained unless the complainant has first obtained a judgment at law and has had an execution returned *nulla bona,* there are exceptions to the rule.

"The rule is general that creditors who have not exhausted their legal remedies cannot resort to equity for assistance, and must therefore reduce their claims to judgment and generally must have execution issued and returned unsatisfied, thus demonstrating to a certainty the need of aid in equity. * * * To this general rule there are some exceptions." *H. B. & M. Co.* v. *Bartlett,* 23 Haw. 192, 198. "Where the rule has not been modified by statute it is the general rule, to which there are a few exceptions, that a creditor cannot resort to equity for aid in the collection of his debt until he has established his claim by procuring judgment thereon." *Lyle* v. *Slegman,* 26 Haw. 351, 352. "Now, in a creditor's bill the debt must be established by some judicial proceeding, and it must be *generally* shown that legal means for its collection have been exhausted." *Byrne* v. *Allen,* 10 Haw. 668, 670. "But nothing is better settled than that such a bill" (a creditors' bill) "must be preceded by a judgment at law establishing the measure and validity of the demand of the complainant for which he seeks satisfaction in chancery. * * * There are exceptions to this rule." *Smith* v. *Railroad Co.,* 99 U. S. 398, 401. See also *Estate of Lopez,* 19 Haw. 620, 624; 5 Ency. Pl. & Pr. 460-466; 15 C. J. 1387-1393; *Case* v. *Beauregard,* 101 U. S. 688, 690, 691; and *Merchants' & Miners' Trans. Co.* v. *Borland,* 53 N. J. Eq. 282, 296. The rule itself is based upon the general principle that equity will not take jurisdiction when the complainant has a complete and adequate remedy at law. That rule does not apply, however, and this is one of the exceptions, when the claim of the complainant is of an equitable nature and admits of a remedy in a court of equity only. "The rule that a creditor must first obtain judgment at law before he can proceed in equity affects the remedy only and not the right, and the recovery of

a judgment is not an indispensable requisite where it is impossible or impracticable. * * * If complainant's demand is of a purely equitable nature, recognizable only by a court of equity, he need not first establish it in an independent suit, but may do so in the creditors' suit to reach the equitable assets of the debtor." 15 C. J. 1390. "Where the claim of complainant is purely equitable, and such as the chancellor will take cognizance of in the first instance, he will go the entire extent and inquire into obstructions in the road of enforcing the demand; and the complainant, therefore, when he goes into equity to assert and liquidate his claim, may, in addition to the assertion of his claim, ask relief against the fraudulent acts of the debtor in attempting to place his estate beyond the reach of creditors." 5 Ency. Pl. & Pr. 463. "To this general rule there are some exceptions, for instance: Where the creditor has a lien on, or equitable interest in, the property of his debtor which is in danger of being lost * * * or, the debtor's estate is a mere equitable one which cannot be reached by any proceeding at law." *H. B. & M. Co.* v. *Bartlett, supra,* 198, 199. See also *Wyman* v. *Wallace,* 201 U. S. 230, 241, 242. "A judgment at law or a personal money decree existing in favor of the complainant, is a necessary prerequisite to the maintenance of suits in equity of this character in all cases except where the demand of the complainant is equitable in its nature and for that reason enforceable primarily in a court of chancery." *Cotes* v. *Bennett,* 183 Ill. 82, 87. (In the case last referred to the complainant sought to use as his foundation for the creditors' bill an interlocutory decree of sale by a court of equity in a prior suit to foreclose a mortgage. The court held that that decree was not sufficient as a foundation because no judgment or decree had yet been rendered in

the first suit for the deficiency and in fact the deficiency had not yet been ascertained. No attempt was there made, as in the case at bar, to foreclose the mortgage and to ask for a decree for the deficiency, all in the same suit in which the attachment of an equitable asset of the defendant was prayed for. The general principle, however, was recognized, as above quoted, that there need be no prior judgment at law and even no prior decree for money, "where the demand of the complainant is equitable in its nature and for that reason enforceable primarily in a court of chancery." *Ib.* 87. Such is the case of one who is seeking to have a mortgage foreclosed. The remedy for him is to be found only in a court of equity. Another, or perhaps the same, exception recognized to the rule is that the prior decree of a court of equity, rendered in another cause, is equally availing to the complainant in a creditors' bill as is a prior judgment at law. "Generally, by statute, decrees in equity for specific sums of money are enforceable by execution in the same manner as judgments at law, and constitute liens upon the property of the debtor to the same extent as ordinary judgments; and it has been uniformly determined that such decrees may be made the basis of creditors' bills." 5 Ency. Pl. & Pr. 489. It is immaterial in this connection that in Hawaii, in foreclosure suits, decrees for specific sums of money may be enforced by execution without the aid of a statute. (See, in this connection, R. L. 1925, §2443.) The principle just quoted is applicable even when the foreclosure decree for a deficiency is rendered and enforced in the exercise of the inherent powers of a court of equity. "Decrees in equity for specific sums of money, enforceable by execution in the same manner as judgments at law, constitute liens upon the property of the debtor to the same extent as ordinary judgments, and may be made the basis of creditors' bills."

12

15 C. J. 1393.  See also *Cotes* v. *Bennett, supra,* 87.  This is not doubted by the demurring respondents.  It is true that the complainant in the case at bar had a promissory note upon which he could have brought an action at law.  That, however, would not have afforded him a complete remedy.  It is beyond doubt that the holder of a mortgage upon which a default has occurred may seek the aid of a court of equity in foreclosing the mortgage, selling the land and applying the proceeds towards payment of the mortgage debt.  "The foreclosure of mortgages has always been a subject within the cognizance of chancery, and any court of general equity powers has jurisdiction of a bill for this purpose."  42 C. J. 29.  "The several circuit judges may hear and determine in equity, all cases hereinafter mentioned, when the parties have not a plain, adequate and complete remedy at the common law, that is to say:  Suits for the redemption of mortgages or to foreclose the same."  R. L. 1925, §2463.  Courts of equity in Hawaii have long exercised this jurisdiction, without question.  Similarly, it is clear that if the mortgaged property fails to bring sufficient to satisfy the claim of the mortgagee a decree for the deficiency may be rendered by the same court of equity and that decree may be enforced by levy of execution if property is found that is properly subject to execution.  "Where a court of equity acquires jurisdiction for the foreclosure of a mortgage, it may retain jurisdiction for the administration of full relief, both legal and equitable, and, as a part of such relief, may render a deficiency judgment, and the parties have no right to a jury for the trial of that issue."  *Young* v. *Vail,* 34 A. L. R. (N. M., 1924) 980-1015, and note at 1016.  "Under the original equity practice, unmodified by any statute or authorized rule of court, a proceeding to foreclose a mortgage was strictly in rem, and, conse-

quently, the court had no power to render a personal judgment against the mortgagor or any other defendant, either for the whole debt or for the deficiency, plaintiff being obliged, in case of such a deficiency, to pursue his remedy by a separate action at law; but, under the rule that, where a court of equity obtains jurisdiction of an action, it will retain it and administer full relief, both legal and equitable, it has been held that, where a court of equity acquires jurisdiction for the foreclosure of a mortgage, it may retain jurisdiction for the administration of full relief, and, as a part of such relief, may render a deficiency judgment." 42 C. J. 290. That principle alone is sufficient to justify the unvarying practice of the past on the part of courts of equity in Hawaii to render and to enforce money judgments for the deficiency of the mortgage debt remaining unsatisfied after the sale. In addition, however, ever since 1859 we have had statutory authority for the exercise of this power by courts of equity. "The judge may assess the amount due upon mortgages, whether of real or personal property, without the intervention of a jury, after hearing of the parties, and adduction of the proofs, and shall order judgment or decree to be entered for the amount awarded, and execution to be issued thereon, subject to appeal." C. C. 1859, §1231; Cp. L. §1231; C. L. §1505; R. L. 1925, §2887. This provision is now a part of chapter 167, R. L. 1925, relating to the "Foreclosure of Mortgages" and, following subtitles relating to "Sale Under a Power," and "By Entry," is under the subtitle "By Suit." Sections 2888, 2889 and 2890, immediately following section 2887 and under the same subtitle "By Suit" and in the same chapter entitled "Foreclosure of Mortgages," relate clearly to matters that can be attended to and adjudicated in a court of equity only. Again, section 2887 was originally section 1231 of the Civil Code of 1859. That section appears in the Code of 1859

in a chapter entitled "Of Equity, Admiralty, and Probate
Matters." This title excludes the possibility that actions
at law were being treated of therein. Section 1228, being
the first section in the chapter immediately under consid-
eration, says that "all applications for the foreclosure of
any mortgage of real or personal property" as well as appli-
cations for abatement of nuisances, for partition of real
property, for the admeasurement of dower and for other
purposes of an equitable nature, "Shall be by sworn peti-
tion addressed to some court, or justice, having jurisdic-
tion thereof." This clearly means some court or justice
having jurisdiction thereof *in equity*. Sections 1229 and
1230 deal with procedure *in limine* in cases of the nature
described in section 1228. Then follows section 1231,—
without any language to indicate that the subject is being
departed from and that actions at law are now being re-
ferred to. Sections 1232, 1233 and 1234 are at present
sections 2888, 2889 and 2890 and are parts of the same
subject relating to "Equity, Admiralty, and Probate Mat-
ters," inferentially excluding law cases. In section 1231
the statement is that "the court or judge" may assess the
amount due upon mortgages while in section 2889 the
statement is that "the judge" may so assess. The change
is not without significance. Long before 1925, in our stat-
utes, the distinction between a court at law and a judge
in equity had become better understood and more empha-
sized than it was perhaps in 1859. Those who prepared
the revision of 1925, and the legislature in adopting that
revision, evidently saw the propriety of referring merely
to "the judge" in section 2887 since it was a matter of
pure equitable cognizance, the foreclosure of mortgages,
that was being dealt with in that section. In other words,
in the Civil Code of 1859 and in subsequent revisions,
including that of 1925, section 2887 was passed and re-

enacted as a provision relating to the foreclosure of mortgages by suit in equity and had no reference to actions at law.

Upon the respondents' third point it may be assumed that, as claimed, insolvency of the debtor does not excuse a creditor from reducing his claim to judgment at law before resorting to equity for aid to collect the same. In the case at bar as above stated the complainant is excused, it is sufficient to say, because his claim is of an equitable nature and he is entitled *ab initio* to resort to equity.

Upon the respondents' fourth point, above stated: If this court is to say that to reach the defaulting shareholders' unpaid subscriptions, the complainant has an adequate remedy at law, it should be able to set forth definitely what that remedy at law is. At the oral argument counsel for the respondents were asked what the remedy at law was to which the present complainant should be relegated. Counsel failed to answer, contenting themselves with saying that that could be ascertained in some later proceeding. Such an explanation or answer coming from the court would not be satisfactory to the litigants. The only possible relevant legal remedy which can be claimed to exist would be that by process of garnishment. In our opinion that remedy does not exist, for the reason, if no other, that in a garnishment proceeding under our statutes it could not be made to appear that the debt due from the shareholders to the trustee was absolute and unconditional and not subject to any contingency or restricted to special purposes or discretionary with King, the trustee. *Peterson* v. *Titcomb,* 11 Haw. 466. By the terms of the declaration of trust in the case at bar the call for payment of the whole or a part of the subscriptions of the shareholders is, to some extent at least, discretionary with the trustee and with the executive committee. While a court of equity doubtless has the power to be its

own collector and to order the subscriptions paid by the shareholders, without prior order from the trustee or the executive committee, a court of law in a garnishment action could not proceed in the same manner and furnish as complete a remedy as can the court of equity. The court at law would not be at liberty to inquire whether the circumstances were such as to require the trustee and the executive committee to make a call for the unpaid subscriptions or to decide for itself that without such a call it would nevertheless attach the unpaid amounts.

Even if a remedy by legal garnishment could be held to exist, it would not be an adequate remedy. It is settled in this jurisdiction that under the statute when the garnishee denies any indebtedness to the defendant his denial cannot be impeached by the plaintiff by evidence *aliunde*. *Bishop Trust Co.* v. *Willfong*, 27 Haw. 651. In a court of equity this impediment would not exist.

Moreover even if it were possible under our statutes for the plaintiff in an action at law to reach by garnishment the unpaid subscriptions due by the shareholders to the defendant trustee, that fact alone would not deprive a court of equity of its power in a proper creditors' bill to reach those equitable assets of the trustee. In Hawaii equity had jurisdiction long before the enactment of any of our garnishment statutes (the earliest was in 1890) to reach equitable assets of the debtor such as those involved in the case at bar. After quoting the statutory declaration from the Act of 1878 that courts of equity have jurisdiction of "bills by creditors to reach and apply in payment of a debt, any property, right, title or interest, legal or equitable, of a debtor within this kingdom which cannot be come at or attached or taken on execution in a suit at law against such debtor," this court said, "We have no doubt that equity had jurisdiction of creditors' bills before the enactment" (1878) " of this definition, under the

general powers given to the chancellor and the vice-chancellor 'to hear and determine all matters in equity' " (citing §847 C. C.). *Byrne* v. *Allen,* 10 Haw. 668, 670. In other words it was in that case (1897) expressly held by this court that in Hawaii the jurisdiction of courts of equity of creditors' bills was ancient and inherent and was not derived from statute; and nothing has been said to the contrary in any subsequent case. It is thoroughly established in this jurisdiction that the subsequent grant by statute to a court of law of a power theretofore possessed by a court of equity does not deprive the court of equity of its preexisting jurisdiction. In *Wailuku Sugar Co.* v. *Cornwell,* 10 Haw. 476, it appeared that in 1860 by statute a commission was created with jurisdiction to hear and determine all controversies respecting water rights and it was contended that the statute thereby ousted equity of its well-known preexisting jurisdiction to settle controversies of that nature. Overruling the contention, this court said (pp. 477-479) : "There must be an explicit expression of the intention of the legislature to make the jurisdiction exclusive. We do not find any such intention in the water rights commission statute. It is affirmative only and does not destroy the jurisdiction in equity. * * * We therefore hold that the jurisdiction in equity, in a proper case for equity, exists concurrently with the jurisdiction of the commissioners where controversies respecting water rights are involved." Our statutes on garnishment are not by their own terms made exclusive. "It is a general principle, often followed by this court, that if equity jurisdiction exists in the absence of a statutory remedy at law, it is not taken away by the grant of such a remedy. The jurisdiction in equity does not cease and revive from time to time with the enactment and repeal of statutes which confer a remedy at law." *Dole* v. *Gear,* 14 Haw. 554, 564. This rule was reaffirmed in *Sakaki-*

*hara* v. *Sakakihara,* 26 Haw. 89, 91. Elsewhere the same view is taken. "The general rule is that where jurisdiction in equity has become established a statute creating a remedy at law or removing the obstacles at law upon the existence of which the equity jurisdiction was originally founded does not oust equity of that jurisdiction, unless the statute affirmatively discloses the legislative intent to make the legal remedy exclusive." 21 C. J. 45. The supposed statutory remedy therefore, even if it exists, does not deprive the court of equity of its jurisdiction to reach the equitable assets under consideration.

In the absence of statutory authority the complainant could not reach these equitable assets of the respondent trustee. There is no privity of contract between the complainant and the shareholders, the only contract being between the trustee and the shareholders. If the complainant can reach these assets at all it is because they are the property of the respondent trustee. "There is a series of English cases that seem to us to show that one of the normal incidents of the relation of beneficiary to trustee, in case of a business trust, is that the beneficiary shall indemnify the trustee." (That is so in the case at bar.) "And, that being so, it will follow that the creditors of the trustees can reach the beneficiaries *via* the trustees.

"There is implicit in the last paragraph several familiar principles of law. These principles should perhaps be stated explicitly before the cases referred to are cited.

"It is familiar law that the liabilities incurred by trustees—whether such liabilities are in contract or in tort or under the terms of a statute—are *their* liabilities. They are principals. It is also familiar law that trustees who have incurred any liability while properly discharging the duties of the trust are entitled to indemnification from the trust funds. It is also familiar law that this right of

the trustees to indemnification from the trust funds is an asset which their creditors can reach; therefore the creditors of the trustees can reach the trust funds *via* the trustees." Warren, Corporate Advantages Without Incorporation, 388.

"A creditor's rights with respect to satisfaction of his debt out of property are, usually, derivative only; he stands in the debtor's shoes; if a debtor acquires property the creditor has a right to be paid out of that property not because it is his property but because it is the property of his debtor; thus the creditor ultimately benefits but his benefit is a derivative benefit." *Ib.* 387. "At law a corporation" (ordinary) "is regarded as a distinct person with whom the shareholder enters into contract to pay for his stock. He is not liable for the corporate debts. There is no privity between the shareholder and the creditors of the corporation. The corporation may, but the creditor cannot, maintain an action at law to recover unpaid stock subscriptions." *In re Putman,* 193 Fed. 464, 469.

"Every shareholder in an insolvent corporation is unconditionally liable in equity to contribute the whole amount unpaid upon his shares at the suit of any judgment creditor." 2 Morawetz, Corp., §822.

"Creditors of an incorporated company who have exhausted their remedy at law can, in order to obtain satisfaction of their judgment, proceed in equity against a stockholder to enforce his liability to the company for the amount remaining due upon his subscription." *Hatch* v. *Dana,* 101 U. S. 205.

The allegation that the trustee is insolvent is not the equivalent of an allegation that he has no legal assets which can be reached in satisfaction of such a decree for a deficiency as may be rendered. There is no allegation that there are no legal assets available for the satisfaction

of a decree for a deficiency. The mere prayer that the equitable assets which are being pursued be applied only after exhaustion of the legal assets is not an equivalent of such an allegation. The question arises, therefore, whether such an allegation is essential to the maintenance of this suit in so far as it partakes of the features of a creditors' bill to reach purely equitable assets.

There is no doubt that there are many cases in which the statement is made that it is an essential prerequisite to the maintenance of a creditors' bill that the creditor first secure a judgment at law and have execution issued and returned *nulla bona*. These two prerequisites are repeatedly mentioned together in the statement of the rule. In the case at bar the bill is being sustained in both of its aspects, that is, as a bill to foreclose a mortgage and as a creditors' bill to reach equitable assets, because the complainant's claim is of a purely equitable nature cognizable only in a court of equity. A court of equity alone can foreclose a mortgage and as incidental relief may enter a decree in terms of money for the deficiency remaining unpaid after sale of the mortgaged property and application of the proceeds to the mortgage debt. In the case at bar, therefore, this particular question narrows itself to this: When, in a court of equity, a decree for money has been properly rendered, even though incidentally, is it necessary to have execution issued upon that decree (there is no doubt of the power of a court of equity to issue an execution in such a case) and to have it returned *nulla bona* as to legal assets before the purely equitable assets of the respondent can be applied to satisfaction of the complainant's claim? And hereunder, if there are two suits in equity and in the first one, purely for the foreclosure of the mortgage and the obtaining of a deficiency judgment, the complainant has secured a decree for the

deficiency, is it necessary in order to sustain the second suit (in the nature of a creditors' bill to reach equitable assets) to allege and prove that execution has been issued upon the earlier decree and returned *nulla bona* as to legal assets?

There are doubtless some authorities which hold that it is necessary. Their reasoning, however, is not satisfactory. In the great multitude of cases in which it is held that as a prerequisite to the maintenance of a creditors' suit it is necessary to secure a judgment at law and to have execution issued and returned without avail, the reason given is in order that thereby it may be shown to the court in equity that the remedy at law does not exist or is inadequate. See, for example, 15 C. J. 1397 and *Miller* v. *Davidson,* 3 Gil. (8 Ill.) 518, 523. If a judgment at law cannot, for some reason, be secured the remedy at law for that very reason is nonexistent. If a judgment at law can be secured but is not attempted to be enforced by execution it still does not appear that the remedy at law is inadequate. It must first be shown by the effort, in the issuance of an execution, that such a remedy does not exist at law. When, however, the petitioner is properly in a court of equity with his original demand, for example, because he is there praying for the enforcement of a trust or because he is there for the adjustment of a claim which is of a purely equitable nature as in the case of a foreclosure of a mortgage—it ordinarily, by that very fact, appears that he has no remedy at law. If he must first allege and prove that in a decree for the deficiency rendered by a court of equity in a prior suit execution was issued and returned unsatisfied in consequence of the failure to find legal assets, it must necessarily be for some reason other than that the remedy at law is inadequate, for it has been found in the supposed case to be utterly

nonexistent. What can that other reason be? Is it that there is some peculiar sanctity which attaches to the equitable assets of the main respondent which does not attach to his legal assets? Is it that courts of equity strain to protect equitable assets while more readily subjecting legal assets to the payment of a just decree for money? We know of no such rule or preference. Is it that it would be unfair, for example, in such a case as in that at bar, to the shareholders whose assessments have not been paid to the trustee to subject their indebtedness to the payment of the creditor's claim? No such unfairness can be perceived. They owe various sums of money to the respondent trustee. It can make absolutely no difference to any of them whether they pay those debts direct to the trustee or whether by order of the court they pay them to the creditor of the trustee. In either event they pay once only and they fulfill thereby an obligation on their part which is real. On the other hand, would it not be unfair to the complainant to require of it a period of delay during which the equitable assets could be dissipated and become lost to it? Again, let it be said, some courts have, and correctly, regarded a judicial proceeding like the present one as being in the nature of an equitable garnishment. Are legal garnishments, which are authorized by statute in this jurisdiction and in many other jurisdictions, ever regarded as unfair to the debtors of the debtor? We think it safe to say that such statutes in their requirements that the debtors pay to the creditors of their own creditor rather than to their own creditor direct are not in anywise unfair to the garnishees. Why should a court of equity regard a resort to these equitable assets as being unfair to the equitable garnishees? We think that an allegation that an execution has been issued and returned *nulla bona* is not a necessary prerequisite and that an equiva-

lent allegation that there are no legal assets is likewise unnecessary.

"But it is insisted, that although the decree may be sustained as to Findren, the Messrs. Kirkman were improperly joined as defendants with him. To sustain this argument, we have been referred to a familiar class of cases, which determine that a creditor cannot have the aid of a court of equity to enable him to enforce the collection of a *legal* demand, or to give him the benefit of the estate of the debtor in the hands of a third person until he has exhausted his *legal remedies*. This principle is clearly stated in the cases cited for the plaintiff in error. * * * But does it apply to a case in which the demand is primarily enforceable in equity? Is it not competent for the complainant in such case to ask a decree against his debtor, and in the same bill to seek to subject debts due to the latter to its payment? * * * However this may be uninfluenced by statute, we think the remedy adopted in this case is in analogy to that authorized by our attachment law, and on that ground we think the jurisdiction of chancery may be supported as against all the parties to the bill. * * * These proceedings are strictly analogous to those required by statute previous to suing out an attachment, and if the party who has an equitable demand cannot be permitted to attach by suit in equity, the debt or property of his debtor in the hands of a third person, a court of chancery must be too restricted in its powers, to afford the redress which the law forum administers in an analogous case. This would be to reverse our notions of the liberal and extended jurisdiction exercised by courts of equity in advancement of justice. * * * The statute gives to one nonresident the remedy by attachment for the collection of a *legal* demand against another, which may be levied by garnishment in the hands of a third person; and

by analogy courts of equity must afford the same facility
of collection to a creditor whose claim is of an equitable
nature." *Kirkman* v. *Vanlier*, 7 Ala. 217, 225, 226, 227.

"It is also true that if a claim is to be satisfied out of
a fund, which is accessible only by the aid of a court of
chancery, application may be made, in the first instance,
to that court, which will not require that the claim should
be first established in a court of law." Marshall, C. J., in
*Russell* v. *Clark's Executors,* 7 Cr. 69, 89.

"The position of defendant is that a suit in equity can-
not be maintained by creditors to set aside a fraudulent
conveyance or to subject property of the debtor to the sat-
isfaction of their claims until judgment has been obtained
and execution returned unsatisfied. Undoubtedly, this
is the rule of federal courts in ordinary cases. * * * This
rule, however, is only applicable where a complainant's
right to equitable relief depends upon a showing that he
has exhausted his remedies at law and is without remedy
save in equity. It has no application to a case where his
only remedy is in equity, as where he seeks to establish a
liability which only equity will recognize or to enforce an
equitable lien or a trust. Day v. Washburn, 24 How. 352,
16 L. Ed. 712; Case v. Beauregard, 101 U. S. 688, 25 L.
Ed., 1004." *Cobb* v. *Interstate Mortgage Corporation,*
20 Fed. (2d.) 786, 788.

"A prior judgment at law and unavailing process are
not conditions on which equitable jurisdiction is founded.
They do not constitute the basis on which the right to
equitable relief rests. They are rather an element in pro-
cedure and not in equitable right. The facts which they
are taken to establish, by the general rule, may be made to
otherwise appear and thus exceptions to the general rule
are recognized and have become as well established as the
rule itself. * * * Nonresidence of the debtor and also his

insolvency have each been held sufficient to dispense with prior judgment and execution at law; the first, because of the great impracticability, if not impossibility, of proceeding against the debtor in that way, and the second, because it stands for what the judgment and execution would conclusively prove." *Williams* v. *Adler-Goldman Com. Co.,* 227 Fed. 374, 375.

"Whenever a creditor has a trust in his favor or a lien upon property for the debt due him he may go into equity without exhausting legal processes or remedies." *Wyman* v. *Wallace,* 201 U. S. 230, 242. See also *Security S. & T. Co.* v. *Portland F. M. Co.,* 124 Ore. 276; 5 Ency. Pl. & Pr. 463; *Greenway* v. *Thomas,* 14 Ill. 270.

The main question is whether in this one suit in equity the respondents other than the trustee may be joined before a judgment for the deficiency has been obtained. If, as we think, a creditors' bill to reach equitable assets of the trustee may be maintained by one creditor only, if the unpaid portions of the subscriptions of the shareholders are equitable assets of the trustee which can be reached in a court of equity only and if a prior decree, in an earlier suit, of a court of equity in the nature of a deficiency judgment is as good a foundation for a later and separate creditors' suit in equity as would be a prior judgment at law, then it seems to us that it would be unduly sacrificing substance to form to say that this complainant, upon whose admitted allegations a deficiency judgment will necessarily be rendered, cannot join both features in one bill and suit and secure a decree hereafter against the nonpaying shareholders if and when he shall obtain the decree for the deficiency in the terms of a money judgment. It seems to us that to so hold would be to give too much dignity to a mere matter of procedure. If it shall prove to be the case that no deficiency judgment is rendered, no

decree will be entered against the respondents other than the trustee. If the result, on the other hand, shall be that a deficiency judgment is entered, it will be entirely practicable to declare, in the absence of some valid defense which has not yet been presented, that these equitable assets of the trustees shall be held, as in justice they ought to be, to reimburse the complainant for the moneys which he loaned to the trustee for the benefit of the shareholders. Nor can any injustice follow to the shareholders or to the trustee himself if they or he have any valid defense either by way of denial of the facts alleged in the petition or by way of a prior lien or claim on behalf of the trustee or by way of counterclaims by the shareholders against the trustee which ought to have precedence as against the present complainant. Any and all of such issues can be tried in the present suit as efficiently and as justly as they could be in a second equity suit brought after the completion of a first equity suit in which the mortgage had been foreclosed and a deficiency judgment had been entered.

The inclusion of the shareholders as respondents before an award of a deficiency judgment and a determination that they are liable, is not entirely novel. In every garnishment case at law, for example, garnishees are joined and held while awaiting a trial and determination of the question whether complainant is entitled to a judgment against his debtor. In effect, as recognized by many authorities, the present suit is in part an equitable garnishment.

While, aside from the quotations above from 15 C. J. 1390 and from 5 Ency. Pl. & Pr. 463, indicating that where the complainant's claim is of an equitable nature "he need not first establish it *in an independent suit,* but may do so in the creditors' suit to reach the equitable assets of the debtor" and may "in addition to the assertion of his claim

ask relief against the fraudulent acts of the debtor in attempting to place his estate beyond the reach of creditors," we have found no precedent directly sustaining the present procedure; we have likewise found neither precedent nor authority to the effect that it cannot properly be followed. The interests of justice and equity require that the bill should be sustained and the demurrer overruled. The decree appealed from is reversed and the case is remanded to the circuit judge for such further proceedings as may be proper not inconsistent with this opinion.

*A. G. M. Robertson (Robertson & Castle* on the briefs) for complainant.

*I. M. Stainback* (also on the brief) for certain respondents.

*C. B. Dwight,* one of the respondents (also on the brief), in person.

### DISSSENTING OPINION OF BANKS, J.

I cannot agree with the majority of the court in its conclusion that the demurrers should be overruled.

It is conceded that the remedy sought in this bill against the respondents, other than the trustee, is in the nature of a creditor's bill to reach and apply equitable assets. I believe that to allow such a remedy without a return of execution *nulla bona* on a judgment or decree, or at least a showing that there are no legal assets out of which the demand of the complainant can be satisfied, would be to engraft upon the general rule governing a creditor's bill an exception that, so far as I know, is entirely without precedent. I take the view that in order to relieve the complainant of the necessity of exhausting its legal remedies against the mortgagor before seeking by a creditor's bill to reach equitable assets it is necessary to allege that there are no legal assets of the mortgagor avail-

able for the satisfaction of a deficiency decree which may be rendered against him. There is no such allegation in the bill. Instead, it affirmatively appears that subsequent to the execution of the mortgage certain property which had been included in it was released. What has become of this property is pure conjecture. For aught that appears to the contrary it may still be under the ownership of the mortgagor.

It is the opinion of the majority that in the instant case the exhaustion of legal remedies against the mortgagor is not a condition precedent to seeking satisfaction of a deficiency decree out of equitable assets; in other words, that resort may be had to such assets in the first instance although the mortgagor may have sufficient legal assets to satisfy the decree. This conclusion and the reasoning in support of it appear in the following portion of the opinion: "There is no doubt that there are many cases in which the statement is made that it is an essential prerequisite to the maintenance of a creditors' bill that the creditor first secure a judgment at law and have execution issued and returned *nulla bona*. These two prerequisites are repeatedly mentioned together in the statement of the rule. In the case at bar the bill is being sustained in both of its aspects, that is, as a bill to foreclose a mortgage and as a creditors' bill to reach equitable assets, because the complainant's claim is of a purely equitable nature cognizable only in a court of equity. A court of equity alone can foreclose a mortgage and as incidental relief may enter a decree in terms of money for the deficiency remaining unpaid after sale of the mortgaged property and application of the proceeds to the mortgage debt. In the case at bar, therefore, this particular question narrows itself to this: When, in a court of equity, a decree for money has been properly rendered, even

though incidentally, is it necessary to have execution issued upon that decree (there is no doubt of the power of a court of equity to issue an execution in such a case) and to have it returned *nulla bona* as to legal assets before the purely equitable assets of the respondent can be applied to satisfaction of the complainant's claim? And hereunder, if there are two suits in equity and in the first one, purely for the foreclosure of the mortgage and the obtaining of a deficiency judgment, the complainant has secured a decree for the deficiency, is it necessary in order to sustain the second suit (in the nature of a creditors' bill to reach equitable assets) to allege and prove that execution has been issued upon the earlier decree and returned *nulla bona* as to legal assets?

"There are doubtless some authorities which hold that it is necessary. Their reasoning, however, is not satisfactory. In the great multitude of cases in which it is held that as a prerequisite to the maintenance of a creditors' suit it is necessary to secure a judgment at law and to have execution issued and returned without avail, the reason given is in order that thereby it may be shown to the court in equity that the remedy at law does not exist or is inadequate. See, for example, 15 C. J. 1397 and *Miller* v. *Davidson,* 3 Gil. (8 Ill.) 518, 523. If a judgment at law cannot, for some reason, be secured the remedy at law for that very reason is nonexistent. If a judgment at law can be secured but is not attempted to be enforced by execution it still does not appear that the remedy at law is inadequate. It must first be shown by the effort, in the issuance of an execution, that such a remedy does not exist at law. When, however, the petitioner is properly in a court of equity with his original demand, for example, because he is there praying for the enforcement of a trust or because he is there for the adjustment of a claim which is of a

purely equitable nature as in the case of a foreclosure of a mortgage—it ordinarily, by that very fact, appears that he has no remedy at law. If he must first allege and prove that in a decree for the deficiency rendered by a court of equity in a prior suit execution was issued and returned unsatisfied in consequence of the failure to find legal assets, it must necessarily be for some reason other than that the remedy at law is inadequate, for it has been found in the supposed case to be utterly nonexistent. What can that other reason be? Is it that there is some peculiar sanctity which attaches to the equitable assets of the main defendant which does not attach to his legal assets? Is it that courts of equity strain to protect equitable assets while more readily subjecting legal assets to the payment of a just decree for money? We know of no such rule or preference."

As I understand this reasoning the purpose of requiring a judgment and execution and a return *nulla bona* is to demonstrate to the court of equity that the remedy at law is inadequate or does not exist, but when as in the case at bar the complainant is properly in equity on a foreclosure suit that *ipso facto* indicates that he cannot obtain a judgment at law and is without legal remedy; that such being the case execution need not issue upon a decree and be returned *nulla bona* as to legal assets nor in order to sustain a creditor's bill need the prerequisite of an execution and its return unsatisfied be alleged and proved; in other words, that because the complainant is in equity upon a matter cognizable only in a court of equity he is excused from first exhausting his debtor's legal assets but may proceed instantly against his equitable assets. I think the fault of this reasoning is in not recognizing that equity does protect equitable assets against the effort of creditors to subject them to the satisfaction of their claims

until legal assets, if there are any, have been exhausted. The very statement of the general rule implies the intention of equity that the creditor must exhaust the legal assets of his debtor before proceeding against his equitable assets. Were this not so equity would not require a judgment or decree against the debtor and an execution and a return unsatisfied. If the effect of this rule is to clothe equitable assets with a garment of "sanctity," it is a result which equity itself has in its wisdom accomplished.

If we were confronted with an action at law the creditor, before he would be permitted to subject the equitable assets of his debtor to the satisfaction of his claim, would be required to comply with certain conditions precedent, namely, to obtain a judgment and have execution issued and returned unsatisfied. The purpose of requiring compliance with these conditions precedent is to compel the creditor, before involving third parties in the litigation, to proceed against the debtor and thus in the first instance exhaust his legal assets. It is the opinion of the majority that because the present complainant is in equity it need not do this but may immediately subject the equitable assets to the satisfaction of its claim. I know of no reason why the general rule should be recognized in the one case and ignored in the other.

There is sound precedent for the conclusion that simply because the complainant's claim is of a purely equitable nature that fact alone does not dispense with the necessity of exhausting the legal assets of the debtor.

*Comstock* v. *Horton*, 235 Mich. 282, was a suit in equity for the dissolution and winding up of a banking copartnership. In that suit the receiver who was appointed filed a petition to establish the liability of Comstock, one of the partners, and others on several notes and endorsements and also asked that certain conveyances made

by Comstock be set aside on the ground that they were in fraud of creditors of the bank. The trial court granted the entire relief prayed for. Upon appeal the supreme court rendered a money decree against Comstock but refused to set aside the conveyances, saying (p. 290): "But we are satisfied the decree was erroneous in setting aside these conveyances in this proceeding. This court has consistently held that to authorize the filing of a bill in aid of execution there must be a judgment or decree fixing the amount, an execution issued thereon and a levy by virtue thereof, and to authorize the filing of a creditor's bill there must be a judgment or decree fixing the amount, an execution issued and returned unsatisfied in whole or in part."

This was a case in which a court of equity had jurisdiction to render a money decree and did in fact render such a decree. It also had jurisdiction, under proper allegations, to render a decree setting aside a fraudulent conveyance of lands and thus subject the lands to the payment of a money decree. Notwithstanding this duality of jurisdiction the court held that until a money decree had been obtained and execution issued thereon and returned unsatisfied in whole or in part equity was without jurisdiction to set aside the fraudulent conveyance. So in the instant case the court below, sitting in equity, had jurisdiction to enter a money decree against the mortgagor for whatever difference there might be between the amount realized on a sale of the mortgaged property and the amount due the complainant. It also had jurisdiction, under proper allegations, to render a decree against alleged holders of equitable assets. But under the rule laid down in the Michigan case, which I believe to be sound and without opposing precedent, it properly refused to exercise this jurisdiction in the absence of an allegation

that no legal assets were available for satisfaction of a money decree for the possible deficiency.

In order to bring the question into a clearer light, let it be assumed that instead of the bill being in its present form it had been brought for the sole purpose of foreclosing the mortgage and obtaining a deficiency judgment against the mortgagor; and let it be further assumed that before the termination of the foreclosure suit the complainant had brought a creditor's bill against the demurring respondents, in which there was reference to the pending foreclosure suit and an allegation that in the opinion of the complainant a decree for a deficiency would be obtained against the mortgagor but no allegation that the mortgagor was without legal assets sufficient to satisfy such judgment, I wonder if it could be seriously doubted that the bill would be demurrable for lack of essential allegations. I think not. It seems to me obvious that such a bill would be fatally defective. I perceive no reason why the rule requiring certain allegations in a creditor's bill should be dispensed with merely because the bill for such relief is joined with a bill to foreclose a mortgage. There are limits, of course, to the maxim that a court of equity having acquired jurisdiction for one purpose will retain it for other purposes in order to settle the entire controversy. Equity does not ordinarily override established principles of law in order to accomplish this result.