SOICHI FUKUOKA, CLAIMANT-APPELLEE *v.* RICHARD M. DODO, DOING BUSINESS AS DODO MORTUARY, EMPLOYER-APPELLANT, AND OCEAN ACCIDENT AND GUARANTEE CORPORATION, INSURANCE CARRIER.

No. 4063.

Argued May 7, 1959.                    Decided June 30, 1959.

Rice, C. J., Stainback and Marumoto, JJ.

OPINION OF THE COURT BY STAINBACK, J.

This is an appeal to this court from final judgment entered in the circuit court of the third circuit in favor of Soichi Fukuoka, claimant-appellee, against Richard M. Dodo, doing business as Dodo Mortuary, employer, and the Ocean Accident & Guarantee Corporation, insurance carrier, appellants. Judgment was based

upon a special verdict of the jury affirming the award of the appellate board of the Department of Labor and Industrial Relations holding that Soichi Fukuoka had sustained a personal injury by disease proximately caused by and resulting from the nature of his employment. The employee became totally disabled for work on September 30, 1954, and still continues to be so disabled as a result of pulmonary tuberculosis.

Soichi Fukuoka was employed by Richard M. Dodo as an undertaker's helper from 1944 until October 1954. His work was to assist in the handling, embalming, disinfecting and preparation for burial or cremation of dead persons on the Island of Hawaii. During this period the Dodo Mortuary handled for burial or cremation from 4 to 14 bodies per year of individuals who had died from, or were infected with, pulmonary tuberculosis at the time of their death, and Fukuoka assisted in handling the bodies processed by the mortuary during this period. He handled with his bare hands a number of bodies of persons who died of pulmonary tuberculosis at the hospital morgue and in the embalming room at the Dodo Mortuary. The corpses at the hospital and at the morgue were usually wrapped in sheets which necessitated the handling of the wrapping sheets both at the hospitals and in the embalming room of his employer. This was done without gloves and mask. Immediately prior to the embalming of a dead body, disinfectants consisting of lysol and hypen were poured upon the body, but it was testified by a doctor that no such disinfectant could completely eradicate or extinguish all tuberculosis bacilli that might remain in or upon the body of a person who died with tuberculosis. In the course of embalming it was necessary to open certain veins and pump in water and massage the corpses so as to drain the blood from the body. Frequently blood spurted out of these openings made for draining the blood, causing mixtures of water and blood to splash over the claimant-appellee. In such proceedings a mask covered the nose and mouth of the claimant-appellee and other workers, although at times the mask was removed and left on the bench when one of the workmen took a rest period or was called to the telephone. Also, it was necessary for the claimant to unclose the nose, mouth and other openings in the body which had been closed at the time of death of the tuberculosis patients.

An employee by the name of Jiro Yogi, who worked from 1947 to October 1950 together with the claimant-appellee, contracted tuberculosis. Frequently the claimant-appellee and Yogi worked on the embalming of a body on opposite sides of the embalming table upon which the body rested. An x-ray taken of Yogi in September 1950 showed that he had active tuberculosis and he was hospitalized in November 1950. From the date of his x-ray until the time of his hospitalization, Yogi and claimant-appellee were working together at the Dodo Mortuary.

The testimony shows that no one of Fukuoka's family was afflicted with the disease and that he himself spent most of his nonworking hours at his home working in his garden, and that he occasionally attended the movies or church.

In 1950 a routine tuberculosis survey x-ray was taken of Fukuoka and, according to the report of the physician examining the x-ray at that time, the report for tuberculosis was negative. In 1952 a similar tuberculosis x-ray survey was taken but the technician failed to observe the existence of the disease. However, in 1954 a routine tuberculosis survey by x-ray clearly showed advanced pulmonary tuberculosis and Fukuoka was immediately hospitalized. Further, a reexamination of the 1952 x-ray showed infection and according to Dr. Henderson there were signs which might have indicated an early stage of pulmonary tuberculosis.

At the close of claimant-appellee's case a motion by appellants for a directed verdict was granted on the basis that no causal connection had been shown between Fukuoka's tuberculosis condition and his employment as there was no evidence as to the pathogenesis of tuberculosis. However, a motion to reopen claimant's case for further proof was granted. It was thereupon stipulated by the claimant-appellee and the appellants that if Dr. Henderson were recalled he would testify as an expert as to the contagious nature of tuberculosis and how it could be transmitted to an individual, as will be more fully set out hereinafter. Claimant then rested. Another motion for a directed verdict was made and refused.

Thereupon the issue was submitted to a jury in the form of a question as follows: "Was the tuberculosis which Mr. Fukuoka contracted proximately caused by his employment or did it result from the nature of his employment?" to which the jury answered

"Yes." A motion for a new trial was made on the ground that the answer of the jury was against the weight of the evidence and contrary to law. This motion was overruled and judgment was entered in favor of claimant-appellee against the employer and the insurance carrier. From this judgment an appeal has been taken to this court.

Counsel bases the appeal on the theory that it is necessary to have the testimony of a physician that the disease was caused by the nature of claimant Fukuoka's work, stating "It must be noted that there is not a single positive expression of opinion on the part of the expert of any probability that Fukuoka's tuberculosis was caused by his work or resulted from the nature of his employment."

The general rule does not require medical evidence where there is evidence from which a jury may make its own conclusions. As stated in *Arais* v. *Kalensnikoff,* 74 P. (2d) 1043, 1047, "The general rule is that the law does not require expert testimony to be offered wherever relevant. *Malpractice cases are an exception.* In such a case the plaintiff must prove by members of the defendant's profession the standard of care or skill ordinarily used in the practice of that profession at a particular place. [Citing cases.] The reason for the exception is obvious." (Emphasis added.)

Evidence is that which tends to produce conviction in the mind as to the existence of a fact. There are many classes or kinds of evidence, among which is the permissible deduction the trier of facts may reasonably draw from other established facts before the court, which deduction is usually characterized in the law of evidence as an inference. If there be a rational connection between facts established by direct evidence and the ultimate fact inferred therefrom, there is no rule that disqualifies such inference simply because the subject thereof may be a matter of scientific knowledge.

As stated in one decision, "An inference, if rational and natural, based on proven facts will stand even though not supported by medical opinion." (*Valente* v. *Bourne Mills,* 77 R. I. 274, 279, 75 A. [2d] 191, 194.)

Not only are such inferences valid when logical but the testimony of experts does not preclude the jury from exercising its "own knowledge and ideas" on the subject of inquiry. (*Head* v. *Hargrave,* 105 U. S. 45.) In the cited case the court quoted with

approval Chief Justice Shaw's opinion in *Murdock* v. *Sumner,* 22 Pick. (Mass.), in which this prerogative of jurors is set forth.

However, in the present case we do have ample expert testimony as to the facts from which the jury might reasonably reach the conclusion that it did. It is stipulated that Dr. Henderson would testify that pulmonary tuberculosis is a highly communicable and contagious disease caused by the tubercle bacilli; (this is a matter of common knowledge and we believe both court and jury could note this without testimony; we have surrounding us in every community tuberculosis hospitals where patients are isolated to prevent contamination of others); that tubercle bacilli can be communicated and transmitted from one living person to another by coughing, sneezing and breathing; that tubercle bacilli may be transmitted by the blood in a body of a person with pulmonary tuberculosis; that it is possible that the wrappings of bodies of persons who have died from pulmonary tuberculosis could become contaminated with tubercle bacilli; that in the course of removing and handling the sheets from the bodies of persons who have died from pulmonary tuberculosis it is possible for the tubercle bacilli to be dispersed or scattered and it is possible that they may be taken into the breath of persons within a reasonable proximity to the sheets; that just because a person dies from tuberculosis, it does not necessarily follow that the tubercle bacilli all die immediately too; that tubercle bacilli can travel for a distance up to six feet through the air when they are coughed or sneezed by a person suffering from pulmonary tuberculosis, and when he does not have a protective mask over his mouth and nose (note that claimant Fukuoka worked in close contact with Yogi for several months); that it is possible to contract pulmonary tuberculosis from contacting the dead bodies of persons who have died from pulmonary tuberculosis; and that tuberculosis does not have a definite period of incubation from the time of exposure to infection until tuberculosis may be clearly diagnosed.

All of these matters were stipulated as the testimony of Dr. Henderson.

The claimant thus was exposed to these numerous sources of infection. This circumstantial evidence is cumulative.

"In many instances facts can be proved only by circumstantial evidence * * *. Circumstances altogether inconclusive, if *separately* considered, may, by their number and joint operation, be sufficient to constitute conclusive proof." (20 Am. Jur., *Evidence*, § 1189, p. 1042.) (Emphasis added.)
*Castle et al.* v. *Bullard*, 23 How. 172, 187, stated as follows:
"Much of the evidence was of a circumstantial character; * * *. Circumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof."

The claimant thus during his employment was exposed to these numerous sources of infection. As contrasted with this, we have evidence that the claimant was free from tuberculosis at least until 1950, long after he had entered the employ of Dodo Mortuary; that he had no family history of such disease, and no contact with afflicted persons except in the course of his employment in which these numerous contacts did occur. This fully justifies the conclusion of the jury. See *Lyden* v. *United Hospital et al.*, 88 N. Y. S. (2d) 743, 744, as follows:

"Claimant's employment in question was that of a laboratory technician. The evidence is that upon entering it, in 1938, she was free from disease. She has no family history of tuberculosis nor that of contact with persons so afflicted except in the course of her employment wherein such contacts did occur, both as to patients so afflicted as well as in her exposure to cultures of live tubercle bacilli and sputum specimens containing them. Her health became somewhat impaired a few months prior to May, 1946, when x-ray examinations disclosed the tubercular affliction.
"The evidence and the reasonable inferences it permits, coupled with the applicable presumptions, support the decision and award."

Although our statute does not specifically have any provision regarding occupational disease, as do the workmen's compensation acts of many States, an examination of these decisions is interesting

and instructive because, in substance, we have the same law where the disease is "proximately caused by the employment." (R. L. H. 1955, § 97-3.)

"It is common knowledge that pulmonary tuberculosis is a disease to which the general public is exposed and it is not peculiarly an occupational disease in the sense that the courts have come to regard silicosis or painter's lead poisoning, as examples. It may become an occupational disease, however, if it appears to have had its origin in a risk connected with the employment and to have flowed from that source as a consequence. It seems obvious that if one is employed in a sanatorium for the treatment of tuberculosis, contraction of the disease is a hazard to which the workman would not have been equally exposed outside the employment and therefore the disease is incidental to the business and not independent of the relation of the employer and employee." (*Evans* v. *Indiana Univ. Medical Center,* 100 N. E. [2d] 828, 121 Ind. App. 678 [1951].)

The court stated that if the industrial board had found that the claimant contracted tuberculosis during the course of employment, there was ample evidence to sustain such finding.

There are numerous other cases similarly holding tuberculosis is an occupational disease where it can be shown that the employee is more exposed than the general public. (*Gray* v. *City of St. Paul,* 84 N. W. [2d] 606; *Board of National Missions* v. *Alaska Industrial Board,* 116 F. Supp. 625, and cases cited therein.)

The determination of a jury that the claimant was disabled due to pulmonary tuberculosis and that he had contracted the disease during the course of his employment is a question of fact. (*Mills* v. *Detroit Tuberculosis Sanitarium,* 35 N. W. [2d] 239; *Slemba* v. *William C. Hamilton & Sons,* 290 Pa. 267, 138 Atl. 841.)

"This court, by an unbroken line of decisions, has established the rule that the verdict of the jury on controverted questions of fact will not be set aside by this court if there was substantial evidence to support the verdict * * *." (*Maki* v. *City and County,* 33 Haw. 167, 171.)

In a workman's compensation case jury-waived, the same rule applies, that is, where there is more than a scintilla of evidence the finding must be sustained.

"Where there is sufficient substantial evidence, more than a mere scintilla, to support such findings the same must be accepted by this court as true. This rule is not a novel one nor is it confined to this jurisdiction. It applies generally to courts such as this where the jurisdiction exercised is purely appellate in its nature and affects all appeals alike, including appeals from the allowance or denial of compensation under Workmen's Compensation Acts where jurisdiction to determine the facts is committed by statute to inferior courts or tribunals.'" (*Rodrigues* v. *Contracting Co.*, 34 Haw. 717, 718.)

Affirmed.

*Martin Pence* (*Pence & Ushijima* on the briefs) for appellant.
*Tom Okino* (also on the brief) for appellee.